GULDENKIRCH *et al. v.* UNITED STATES MUT. ACC. ASS'N.

*(City Court of Brooklyn, General Term.* May 27, 1889.)

1. ACCIDENT INSURANCE—PROOF OF DEATH—PROVINCE OF JURY.
    A policy provided that the insurance should not cover intentional injuries inflicted by the insured or any other person. It appeared that one G. went to the door of his house in response to the ringing of the bell, and about five minutes thereafter the report of a pistol was heard; deceased was then found lying on the floor in the hall, suffering from a pistol wound from which he died. Voices were heard in the hall before the report of the pistol, and G. was heard to say, "You cannot go up stairs," but no noise or scuffling was heard. No one but G. was present at the shooting, and neither party called him as a witness. Deceased was in the habit of visiting at G.'s house, and on the evening in question was in the act of bringing medicine to G.'s sister, to whom he was secretly married, though it did not appear that G. was ignorant of the fact. *Held,* that the question whether the killing was intentional or accidental was properly left to the jury.

2. SAME—WAIVER.
    Plaintiffs having furnished defendant with blank proofs of death properly filled up by the coroner, it was the duty of the defendant to object to them, if they were deemed insufficient.

3. SAME—BURDEN OF PROOF.
    Defendant had the affirmative in such case, and was bound to prove that the condition of the policy as to intentional injuries had been violated.

Appeal from trial term.

Action by Peter Guldenkirch and his wife against the United States Mutual Accident Association, to recover $5,000 on a policy of insurance on the life of their son. Defendant appeals from a judgment entered on verdict of jury in favor of plaintiffs, and from order denying his motion for a new trial.

Argued before CLEMENT, C. J., and OSBORNE, J.

*William B. Smith,* for appellant. *Stickney & Shepard,* for respondents.

CLEMENT, C. J.    This action was brought to recover upon a policy of accident insurance issued by the appellant to one Nicholas Guldenkirch, who, on the 26th day of March, 1888, died at the city of Brooklyn from injuries produced by a pistol shot fired by Charles H. Green.    The policy insured Guldenkirch against personal bodily injuries through external violent and accidental means, and, if death resulted from such injuries alone, the defendant agreed to pay to the plaintiffs, his father and mother, the sum of $5,000.    It also contained several conditions, one of which was that the insurance should not cover intentional injuries inflicted by the insured or any other person.    The clause in the policy as to proofs of death required the beneficiaries to make affirmative and positive proof that such death resulted from bodily injuries covered by the insurance, and within six months of the happening of the accident.    The above statement of the policy covers all that is essential to refer to in deciding this case.    At the trial, at the end of plaintiffs' case, a motion was made to dismiss the complaint, which motion was denied, and, the defendant offering no testimony, the case was submitted to the jury under a charge to which no exception was taken by either party, and a verdict was rendered for the plaintiffs.    A motion for a new trial on the minutes was denied, and from the order denying such motion and the judgment entered on the verdict, this appeal is taken.    There is no exception in the case, except to the denial of the motion to dismiss.

The plaintiffs proved that on the evening of March 26, 1888, the doorbell of the house occupied by Green and his sister rang, and that Green went to the door, and about five minutes afterwards the report of a pistol was heard, and a nurse in the house, who was in the basement, went up the stairs, passing Green at the head, and there found Guldenkirch with his overcoat on, lying on the floor, and Dr. Olcott was sent for, who testified that he found Guldenkirch on the floor of the hall suffering from a pistol wound in the head.    Voices were heard in the hall before the report of the pistol, and a witness in the case testified that Green said to Guldenkirch, "You cannot go up stairs."    There was no scuffling, and no loud noise.    It was conceded on the trial that Guldenkirch had been married to the sister of Green for six years prior to the shooting, though she was known in the house of her brother as Miss Green.    She was an invalid, and confined to her bed, and Guldenkirch had visited her for several evenings prior to the night he was shot, and on the night of March 23d, it is claimed by the appellant, had had words with Green in the bedroom of the sick woman, but the testimony on this point is meager and vague, and is capable of two constructions,—one that there was trouble between the two men, and the other that the sick woman did not want her husband to go home, and that the brother urged her to allow him to leave, as it was about 10 o'clock, and as she might be disturbed.    The nurse heard no dispute between the two men, and after the trouble, whatever it was, they conversed together in the hall.    Green's conduct could be explained on either theory, that he was angry with Guldenkirch for visiting his sister, or that he, [Green,] from love of his sister, did not think she was in a proper condition to see or talk to any one.    There is no proof in the case that unfriendly relations had existed between the two men, except as before stated, and there is no evidence that Green had objected, except on the two occasions, to the visits of Guldenkirch to the bedroom of his sister, and it does not appear that Green did not know of the marriage.    Guldenkirch visited his wife on the Thursday, Friday, Saturday, and Sunday evenings immediately before the 26th of March, which was a Monday.    There was no one present at the shooting except Guldenkirch and Green, and neither party at the trial saw fit to call Green as a witness.

The plaintiff was bound to prove that Guldenkirch died from external violent and accidental means.    There is no dispute in the case that Guldenkirch died from the pistol shot, but the contention is that the shooting was

not accidental. The court of appeals have recently determined the meaning of the expression in the policy, "accidental means:" "An accident is the happening of an event without the aid and the design of the person, and which is unforeseen." *Paul* v. *Insurance Co.*, 112 N. Y. 472, 20 N. E. Rep. 347. The testimony in the case tends strongly to show that the shooting was accidental in so far as Guldenkirch was concerned. The shooting happened without his aid and design, and was entirely unforeseen by him. There is a strong presumption against suicide, and direct testimony that no scuffling was heard by a person in a room on the next floor with the door open into the hall. There was also evidence that Guldenkirch was taking medicine to his sick wife, and therefore went to the house for a good reason. The question whether the death was accidental was a proper one to be decided by the jury on the evidence, and their verdict on that question cannot be disturbed. The cases of *Insurance Co.* v. *McConkey*, 127 U. S. 661, 8 Sup. Ct. Rep. 1360, and *Mallory* v. *Insurance Co.*, 47 N. Y. 52, are in point.

The company pleaded, as an affirmative defense, the condition in the policy that the insurance should not cover intentional injuries inflicted by the insured or any other person, and on this issue we are of opinion that the defendant had the affirmative, and was bound to satisfy the jury, by a fair preponderance of evidence, that the condition had been broken. *Murray* v. *Insurance Co.*, 85 N. Y. 236; *Slocovich* v. *Insurance Co.*, 108 N. Y. 56, 14 N. E. Rep. 802. Was the testimony on this question sufficient to hold, as a matter of law, that this defense had been made out? The statement of the coroner was not evidence at all on the point, because he had no personal knowledge of the matter, and simply gave his opinion. The blank proofs of death were received from the company and one was headed "Attending Physician's Statement," which was properly filled up by the coroner, who by law gives the burial certificate when the attending physician declines so to do. If a man does another an injury, it does not follow, as a matter of law, that such injury is intentional, and in civil and criminal cases intention is a question of fact to be inferred from the act itself and the surrounding circumstances. The counsel for the appellant cites the case of *People* v. *Conroy*, 97 N. Y. 62. That case does not hold that intention is to be inferred on proof of the act of killing, but the learned chief judge distinctly says that it is the province of the jury to determine the character of the act. See, also, *Stokes* v. *People*, 53 N. Y. 164. In this case, where the burden of proof was on the defendant, it would not have been right for the court to draw inferences from the testimony as to what took place in the hall when Guldenkirch was shot. The question was one peculiarly within the province of the jury whose duty it is to weigh testimony and draw conclusions therefrom.

The defendant received the proofs of death and kept the same, and made no objection thereto. The proofs were a compliance with the terms of the policy, and if the company had desired anything further, they should have objected to those furnished. We also think that the verdict was not against the weight of evidence for the reasons already given. Judgment and order denying a new trial affirmed, with costs.

OSBORNE, J., concurs.