EDWARD STEVENS AND MARGARET POLLY STEVENS, MINORS, BY DAVID W. SHIELDS, THEIR GUARDIAN *v.* CONTINENTAL CASUALTY COMPANY.

Opinion filed November 30, 1903.

### Burden of Proof Where Death Is Intentionally Inflicted.

1. In an action to recover upon an accident policy insuring against injuries incurred through external, violent, and purely accidental causes, but providing that in loss of life from injury intentionally inflicted upon the insured by himself or another person the limit of the company's liability should be one-tenth the amount which would otherwise be payable under the policy, where the defendant alleged in its answer that the death of the insured was from an injury intentionally inflicted by a person other than the deceased, the burden was on it to prove that the injury of the deceased was intentionally and not accidentally inflicted.

### No Presumption that Death from Gunshot Was Intentional.

2. Upon proof of death from a gunshot wound, in the absence of evidence as to how the wound was inflicted, it will be presumed that the wound was accidental, and not that it was illegally inflicted.

### Statements of Guardian, in Preliminary Proofs of Death, Not Binding Upon His Wards.

3. While primary proofs of death are ordinarily admissible on the trial as *prima facie* evidence of the facts stated therein against the insured and on behalf of the insurer, where the preliminary proofs were made by a guardian of the infant beneficiaries under the policy, and the statements made by him as to the cause of death were based entirely upon hearsay, such statements could not be considered as competent evidence of matters therein recited, as against the infant plaintiffs, so as to relieve defendant from the necessity of proving such facts. Such statements are admissions of the guardian alone, and not of the infants, and the guardian has no authority to make admissions against the interests of his wards.

### Infliction of Injury Raises No Presumption of Intent—It Is a Matter of Proof.

4. Where defendant sought to reduce its liability under an accident policy by bringing the case within a proviso therein limiting its liability to one-tenth of the face of the policy in case death resulted from an injury intentionally inflicted by insured or another person, the intent to injure or kill, on the part of the person inflicting the injury, becomes an essential part of the proof, and the infliction of the injury does not raise a presumption that it was done intentionally.

**Intention a Question of Fact—Court Cannot Direct a Finding Where the Proof May Justify Different Conclusions.**

> 5. Intention is a question of fact to be inferred from the act itself and the surrounding circumstances. So, where the burden of proof is upon a party to show that a shooting was done with intent to kill or injure, the court cannot require the jury to find that the act was intentionally done if the facts and circumstances proved can be reconciled with an accidental or nonintentional injury.

**Case Properly Submitted to Jury.**

> 6. The evidence in this case is consistent with an intentional shooting of the insured by a third person, but is not inconsistent with and does not negative an accidental or nonintentional shooting. The case, therefore, was properly submitted to the jury to determine whether the injury resulting in the death of insured was intentionally inflicted.

Appeal from District Court, Cass county; *Pollock, J.*

Action by Edward and Polly Stevens, by their guardian, against the Continental Casualty Company. Judgment for plaintiffs, and defendant appeals.

Affirmed.

*Ball, Watson & Maclay,* for appellant.

The statements contained in the proofs of death, standing without explanation or denial, conclusively establish that the insured died as the result of a pistol-shot wound inflicted upon him by a person whom he had ejected from his train. *Mutual Benefit Ins. Co.* v. *Newton,* 89 U. S. 32, 22 L. Ed. 793; *Lodge* v. *Beck,* 181 U. S. 49, 56; *Hassencamp* v. *Insurance Co.,* 120 Fed. 475; *Spruill* v. *Insurance Co.,* 27 N. E. Rep. 39; *Hart* v. *Lodge,* 84 N. W. Rep. 85; *Walther* v. *Mutual Ins. Co.,* 4 Pac. Rep. 413; *Hanna* v. *Conn. Mut. Life Ins. Co.,* 44 N. E. Rep. 1099.

The law presumes that a man intends the natural and probable consequences of his acts. There is also a presumption that men's acts are intentional. *Northwestern Benev. Society of Duluth* v. *Dudley,* 61 N. E. Rep. 207; *People* v. *Langton,* 67 Cal. 427, 7 Pac. Rep. 643.

Even in a trial for murder, from the proof of killing with a deadly weapon, the law implies an intent to kill. *Conway* v. *Reed,* 66 Mo. 354; *People* v. *Newcomer,* 50 Pac. Rep. 405; *State* v. *Silk,* 44 S. W. Rep. 76.

Acts and conduct of parties are the best indices as to intent or purpose of mind. *Insurance Co.* v. *Smith,* 71 S. W. Rep. 391.

There is no fact or circumstance in evidence upon which a guess could be based. At the utmost all that can be said is, that there is a possibility that the man who shot Stevens discharged his pistol accidentally, or for the purpose of frightening him. But it cannot be said that the evidence tends to prove any such theory or would justify such a conclusion on the part of the jury. *Butero v. Travelers Acc. Ins. Co. of Hartford, Conn.,* 71 N. W. Rep. 811; *Orr v. Insurance Co.,* 24 So. 997; *Insurance Co. v. Hayward,* 34 S. W. Rep. 801; *Insurance Co. v. Smith,* 71 S. W. Rep. 391; *Johnson v. Insurance Co.,* 39 S. W. Rep. 972.

There is not even a scintilla of evidence upon which the verdict can rest. But even if the possibility that the shooting was really accidental, can be considered evidence at all, it is too slight and inconclusive in its nature to go to the jury. *Bowman v. Eppinger,* 1 N. D. 21, 44 N. W. Rep. 1000.

*Morrill & Engerud,* for respondents.

The proviso under which appellant contends that it is relieved from full liability, is an exception to the general policy, and the burden is upon the defendant to establish the fact, that the insured came to his death from an injury intentionally inflicted by another person. *Home Benefit Association v. Sargent,* 142 U. S. 691, 12 Sup. Ct. Rep. 332, 35 L. Ed. 1160; *Jones v. U. S. Mut. Acc. Ass'n,* 61 N. W. Rep. 485; *Railway Official and Employes Acc. Ass'n. v. Drummond,* 76 N. W. Rep. 562; *Anthony v. Mercantile Mut. Acc. Ass'n,* 38 N. E. Rep. 973; *Goldschmidt v. Mut. Life Ins. Co. of New York,* 102 N. Y. 486, 7 N. E. Rep. 408.

This is the rule in the courts of the United States and different states, and some go so far as to hold that such defense must be proved beyond a reasonable doubt. *Decker v. Somerest Mut. Fire Co.,* 66 Me. 406; *Lexington F. M. & L. Ins. Co. v. Paver,* 16 Ohio 324; *McConnell v. Delaware Mut. Ins. Co.,* 18 Ill. 228.

In case of suicide the presumption is against it. *Mallory v. Travelers Ins. Co.,* 47 N. Y. 52; *Keels v. Mut. Reserve F. L. Ass'n,* 29 Fed. 198.

It cannot be presumed that the person shooting did so with intent to injure the insured; so in doubtful cases the presumption should be against such intent. *Jones v. U. S. Mut. Acc. Ass'n, supra.*

An accident within the meaning of contracts of this kind includes any event which takes place without the foresight or expectation of the person affected thereby. *Railway Employes Ass'n, etc.,* v. *Drummond, supra; Button* v. *American Mut. Acc. Ass'n,* 65 N. W. Rep. 861; *Richard* v. *Ins. Co.,* 20 N. E. Rep. 347; *McGlinchey* v. *Casualty Co.,* 14 Atl. Rep. 13; *Lovelace* v. *Travelers Pro. Ass'n,* 28 S. W. Rep. 877; *Fidelity and Casualty Co.* v. *Johnson,* 17 So. Rep. 2; Anderson's Law Dictionary; Bouvier's Law Dictionary.

The statements made by the guardian, Mr. Shields, were made without any personal knowledge of the facts, as he fully explains in his testimony. These proofs are not to be taken as conclusive, and are subject to explanation. *The Home Benefit Ass'n* v. *Sargent, supra; Utter* v. *Travelers Ins. Co.,* 32 N. W. Rep. 812; *Coburn* v. *Travelers Ins. Co.,* 13 N. E. Rep. 604; *Freeman* v. *Travelers Ins. Co.,* 12 N. E. Rep. 372; *Keene* v. *New England Mutual Acc. Ass'n,* 36 N. E. Rep. 891; *Cornwell* v. *Fraternal Acc. Ass'n of America,* 6 N. D. Rep. 201, 69 N. W. Rep. 191.

COCHRANE, J. Edward and Polly Stevens, minor children of Fred W. Stevens, deceased, by their guardian, sued to recover the amount of an accident policy issued by the Continental Casualty Company. This policy was for $2,000, and stipulated to indemnify the beneficiaries therein named in case of the death of the insured through external, violent, and purely accidental causes, unless such death should result from an injury "intentionally inflicted upon the insured by himself or another person," in which event the beneficiaries were to receive one-tenth of the face of the policy, or $200. No question is raised as to the sufficiency of the proofs of death, and it is conceded that they were made in proper time. Plaintiffs, in their complaint, alleged that the insured died from personal injury received solely from accidental causes. The answer denied this averment of the complaint, and defendant alleged "that on or about the 12th day of August, 1902, near Bismarck, in the state of North Dakota, while the said Stevens was engaged in some disagreement, altercation, or fight with some person or persons whom he had expelled or was endeavoring to expel from the passenger train upon which he (the said Stevens) was then employed as a passenger brakeman, one of the said persons (the name of such person being unknown to the defendant) discharged a revolver or a gun loaded with powder and bullet at said Stevens, intentionally, and with the intent of injuring or killing said

Stevens, and that said Stevens was thereby so wounded and injured that soon thereafter, on or about the 18th day of August, 1902, he died therefrom, and on account of the wound and injury so received by him as aforesaid." Defendant offered to allow judgment to be taken against it for $200, with interest and costs. Upon the trial, plaintiffs rested their case on proof of the policy of insurance, and the evidence of C. F. Watkins, a surgeon employed at the Brainerd hospital, to the effect that the insured was brought to the hospital on the 13th day of August, 1902, suffering from a wound inflicted by a bullet from some firearm, the calibre of which he was unable to state. The wound was in the upper part of the thigh, and produced a double comminuted fracture of the femur or thigh bone. That insured died at the hospital on August 18, 1902, from the direct result of the gunshot wound just described. Defendant introduced in evidence the proofs · of death and loss furnished the company. In these proofs was the affidavit of David W. Shields, guardian of the infant plaintiffs, setting forth that "Stevens was at the time of his death a passenger brakeman on the Northern Pacific Railway, that at the time of the injury he was performing his duties as passenger brakeman; that he had shortly before ejected a negro from the train, who, soon after being so put off the train, shot the brakeman, Stevens." Further on in the same affidavit was the following statement: "In the performance of his duties, it became necessary for Brakeman Stevens to eject a colored passenger who refused to pay his fare. After being put off the train, he shot Stevens with a 45 Colt's army revolver. He fell at once, and was unable to move without assistance. He had to be carried to the baggage car. He died at the Brainerd hospital of the Northern Pacific Railway Company at Brainerd, Minnesota." Accompanying these proofs, and a part thereof, was the affidavit of Isaac D. Worden to the effect that he was present when Stevens was shot, and was a witness to the shooting; "that the decedent was injured in the upper part of the left thigh by a bullet from a 45 Colt's army revolver, shot by another person; that Stevens fell at once, and was unable to move or help himself; that the visible mark of the injury was a hole in the back part of the thigh large enough to put one's thumb into." Defendant had R. M. Poindexter sworn as a witness, who testified that he was a clerk in the United States mail service, and was on the train the night Stevens was shot. "I remember the occasion of

the attempt to expel or eject certain persons from the train at or near Bismarck, North Dakota, on August 12, 1902. At that time I was alone in the mail car, and had charge of receiving and distributing letters in the car without any assistance. I heard some one passing along on top of the car over my head. Before that the train was pulled down inside the yards—pulled out a ways from Bismarck. I stepped to the door to see what was up, and saw somebody passing on the north side of the train, and also heard somebody coming up on the south side, and somebody on the roof. As I went to the door on the north side, and stood there a short time, I heard a pistol shot; and, as I heard it, I could not see who fired it. It was right in front of the engine. Then I started to go to the south side of the car to look out of that door; and just as I got to the door I heard another shot, and I looked out, and saw some person stop, wheel around, and kind of step forward, and saw a flash, and heard Stevens say 'Stop'; he was shot. I remember his language—what he said. He said: 'Flag her down, boys. I am shot.' I heard the report of the pistol. Q. Did you hear Stevens say anything just prior to the shot, to the people that he was chasing or ejecting from the train? A. Only as he came up to the side of the car he helloed, 'Get off from there.' " D. W. Shields testified in rebuttal that he was the guardian of the minor plaintiffs; that the proofs of death and loss were prepared by plaintiffs' attorneys on blanks furnished by the company, and that he signed them at the attorneys' request. At the time the proofs were mailed and forwarded, he had no knowledge whatever of the matters therein stated. All knowledge he then had was what had been told him by others. At the close of the testimony defendant's counsel moved the court to direct a verdict for plaintiff for $200 and interest, only. The motion was denied, and the case submitted to the jury, which returned a verdict for plaintiffs for the full amount claimed. Defendant moved that notwithstanding the verdict, plaintiffs have judgment for $200 and interest and costs, and no more, which motion was denied. This appeal is from the judgment entered on the verdict.

The assignments of error present a single question for our determination. Was there sufficient evidence to justify the submission of this case to the jury, or should the court have directed a verdict, on defendant's motion, for the sum of $200 only? In the condition of the pleadings, plaintiffs made a *prima facie* case by proof of the contract of insurance, and the fact that the insured died

from the effect of the gunshot wound. The presumption of the law is that the wound was accidentally, and not illegally, inflicted. *Lampkin* v. *Ins. Co.* (Colo. App.) 52 Pac. 1040; *Jones* v. *Accident Ass'n* (Iowa) 61 N. W. 485; *Accident Ins. Co.* v. *Bennett* (Tenn. Sup.) 16 S. W. 723, 25 Am. St. Rep. 685; *Travelers' Ins. Co.* v. *McConkey,* 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; *Peck* v. *Accident Ass'n* (Sup.) 5 N. Y. Supp. 215; 1 Cyc. 289. The burden was then upon the defendant to show that its liability was avoided because the injury resulting in the death of the assured was intentionally inflicted by another person, as alleged in its answer. *Lampkin* v. *Ins. Co.,* 52 Pac. 1040, 11 Colo. App. 249; *Travelers' Ins. Co.* v. *Wyness* (Ga.) 34 S. E. 113; *Coburn* v. *Ins. Co.,* 145 Mass. 226, 13 N. E. 604; *Guldenkirch* v. *Accident Ass'n* (City Ct. N. Y.) 5 N. Y. Supp. 428; *Home Benefit Ass'n* v. *Sargent,* 142 U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1160; *Jones* v. *Accident Ass'n* (Iowa) 61 N. W. 485; *Goldschmidt* v. *Ins. Co.,* 102 N. Y. 486, 7 N. E. 408; *Cronkhite* v. *Ins. Co.,* 75 Wis. 116, 43 N. W. 731, 17 Am. St. Rep. 184; 1 Cyc. 290, and cases cited.

The clause in the policy sued upon excusing defendant from full liability in case death resulted from injuries intentionally inflicted is inserted by way of proviso. The rule of pleading is that stipulations added to the principal contract, which are intended to avoid the defendant's promise by way of defeasance or excuse, must be pleaded in defense; and, where the defendant intends to rest its defense upon a fact which is not included in the allegations necessary to the support of the plaintiff's case, it must set it out in precise terms in the answer. *Coburn* v. *Ins. Co.,* 145 Mass. 226, 13 N. E. 604.

Plaintiff's complaint stated a cause ot action without averments negativing the proviso upon which defendant relies to escape liability, and, as said by the Massachusetts court, "In the case at bar the policy is general, and insures against death or injury by external, violent, and accidental means. It is made subject to certain agreements and conditions annexed thereto. The occurrence of these conditions is to operate to defeat the policy, and this should be shown by the party relying upon them." Defendant has followed this rule of pleading, and expressly alleged in its answer that the death of Mr. Stevens was produced through the intentional act of another, and it has therefore imposed upon itself the burden of proving the substantive fact which it was required to, and did, aver

in its pleading. *Freeman* v. *Ins. Co.,* 144 Mass. 572, 12 N: E. 372; *Guldenkirch* v. *Accident Ass'n* (City Ct. N. Y.) 5 N. Y. Supp. 428; *Slocovich* v. *Ins. Co.,* 108 N. Y. 56, 14 N. E. 802; *Anthony* v. *Accident Ass'n,* 162 Mass. 354, 38 N. E. 973, 26 L. R. A. 406, 44 Am. St. Rep. 367; 2 Enc. of Evidence, 794. With the burden of proof upon the defendant to show that the insured died from injury intentionally inflicted, ought the judge to have instructed the jury that the burden was sustained, as a matter of law? "It is not often, where a party has the burden of proving a fact by the testimony of witnesses, that the jury can be required by the court to say that the fact is proved. They may disbelieve the witnesses. If the conclusion is to be reached by drawing inferences of fact from other facts agreed, ordinarily the jury alone can draw these inferences. It is only when no inferences are possible, except those which lead to one conclusion, that the jury can be required to find a proposition affirmatively established." *Anthony* v. *Accident Ass'n,* 162 Mass. 354, 38 N. E. 973, 26 L. R. A. 406, 44 Am. St. Rep. 367. That the person who shot the insured in this case intended to do so must not only be an inference arising from the facts proven, but any other inference must be excluded by the proofs. The city court of Brooklyn had before it for consideration this same question, under facts and pleadings closely analogous. Concerning it, they said: "If a man does an injury, it does not follow as a matter of law that such injury is intentional; and, in civil and criminal cases, intention is a question of fact, to be inferred from the act itself and surrounding circumstances. In this case, where the burden of proof was on the defendant, it would not have been right for the court to draw inferences from the testimony as to what took place in the hall when Guldenkirch was shot. The question was one peculiarly within the province of the jury, whose duty it is to weigh testimony and draw conclusions therefrom." *Guldenkirch* v. *Accident Ass'n* (City Ct. N. Y.) 5 N. Y. Supp. 428. The proofs in the case at bar are consistent with the theory that the shooting of Brakeman Stevens was the intentional act of a third person, but they are not inconsistent with a nonintentional injury. A question, therefore, was presented for the jury's consideration; and the court, under the rules above stated, could not say, as a matter of law, that the injury was intentionally inflicted. The witness Poindexter heard some one on the top of the mail car, heard Stevens' hello, "Get off from there," and heard a shot fired in

front of the engine. From the form of narrative, it would appear that the person on top of the car, toward whom Stevens directed his remark, was still on the car when the shot in front of the engine was fired. This shot, it is fair to presume, was fired by some one for some unexplained purpose—possibly to frighten the person on top of the mail car. There is no evidence whether the person on the mail car got down onto the ground before the shooting of Stevens, or that it was this person who shot the second time. Whether it was a tramp, a trainman, or a passenger, who "stopped, wheeled around and kind of stepped forward" before the shot was fired, the proofs do not disclose; nor do they disclose that it was the person whose actions are thus described who fired the shot. No reason or necessity for the shooting is known. If it was intentionally done, what was the motive? It may have been an accidental shot. It, like the first one, may have been fired to frighten some one, and without intention to injure. Were both shots fired by the same person? At the time the last shot was fired, where was Stevens standing with reference to the shooter, and what was his attitude? Who else was present? Did the shooter have any reason for protecting himself against an impending assault, either from Stevens or from any other member of the train crew? Had he any grievance against any person standing near Stevens? Did this shooting take place after dark or in the daytime? The court could not presume that, because Brakeman Stevens ordered some one to "get off from there," that person intentionally shot Stevens. Neither can it be said that because Stevens was walking along the side of a train on which was supposed to be a tramp or tramps, a tramp shot him. The proof is devoid of circumstances tending to show an intentional shooting, unless it is to be inferred from the fact of shooting alone. The fact that there is no evidence in this case as to who did the shooting, or of any motive in the party to especially single out Brakeman Stevens for a target; that Stevens was not in the act of making any hostile demonstration toward the individual who fired the shot, and there is no evidence of any language or conduct on his part having a natural tendency to provoke an assault or excite a spirit of anger or revenge; and that the circumstances are reconcilable with an accidental shooting— we think, brings the case fairly within the principle upon which the following cases turned: *Association v. Drummond* (Neb.) 76 N. W. 562; *Richards v. Travelers' Ins. Co.* (Cal.) 26 Pac. 762, 23

Am. St. Rep. 455; *Utter* v. *Ins. Co.* (Mich.) 32 N. W. 812, 8 Am. St. Rep. 913; *Keene* v. *Accident Ass'n,* 161 Mass. 149, 36 N. E. 891. That the injury was intentionally inflicted will not be presumed from the mere proof of the shooting. See Lawson's Presumptive Evidence, 331; *People* v. *Plath,* 100 N. Y. 590, 3 N. E. 790, 53 Am. Rep. 236; *People* v. *Landman* (Cal.) 37 Pac. 518; *State* v. *Debolt* (Iowa) 73 N. W. 500; *Patterson* v. *State,* (Ga.) 11 S. E. 620, 21 Am. St. Rep. 152. In this last case it is said: "The particular intent charged must be proved to the satisfaction of the jury, and no intent of law, or mere legal presumption differing from the intent in fact, can be allowed to supply the place of the latter."

It is urged in this case that the proofs of death which were offered in evidence by defendant established the fact *prima facie* that the insured was injured by the act of a negro whom he had ejected from the train. Appellant relies largely upon the evidential value of these preliminary proofs as establishing an intentional shooting. They were made by the guardian of the plaintiffs entirely upon hearsay. The statements were made to convey to the indemnitors the information that an event had happened which entitled the beneficiaries, under the insurance contract, to indemnity, because the insured had lost his life through external, violent, and accidental causes. Their purpose was effected, both as to the insurer and the insured, when the company was advised of the fact of the accident, and the circumstances surrounding it. Recitals in preliminary proofs of death, based upon hearsay, and conveying mere conclusions, which, in their nature, must have been, and were understood as, based upon hearsay, so far as the party making them was concerned, cannot ordinarily be considered as admissions or estoppels, so as to prevent a showing of the true facts upon the trial. *Home Benefit Ass'n* v. *Sargent,* 142 U. S. 691, 12 Sup. Ct. 332, 36 L. Ed. 1160; *Ins. Co.* v. *Schmidt,* 40 Ohio St. 112; *Bentz* v. *Ass'n,* 40 Minn. 202, 41 N. W. 1037, 2 L. R. A. 784; 2 Bacon's Ben. Soc., section 472. But here the recital in the proof of death that deceased was shot by a negro whom he had ejected from the train is not *prima facie* evidence, or any evidence at all, in favor of the defendant company, that the insured was shot by a negro, or that he had ejected a negro from the train and was shot by him; and it could not be relied upon by defendant as proof of such matters even in the absence of any evidence from the plaintiff tending to contradict the statement. Such statements are received to

prove matters therein recited, upon the theory that they are in the nature of admissions against one's interest. 2 Bacon, Ben. Soc. section 471, and cases cited.

A guardian cannot make admissions against the interests of his wards. This action is being prosecuted by and in the name of the minor children of the deceased, and they are represented in the action by a guardian to protect their interests, and not to make admissions against their interests, whereby their interests may be jeopardized. If the insured did not in fact eject a negro from the train, and was not in fact shot by the negro so ejected, the guardian of the minors (beneficiaries under the policy) could not make an admission that such were the facts, and bind his wards by an admission contrary to the truth; while, on the other hand, if their parent was shot by a negro he had ejected from the train, this was a link in the chain of circumstantial evidence tending to show an intentional injury, which defendant assumed the burden of proving by competent evidence, and it could not be proven by an admission of the guardian, based alone on hearsay, made in another proceeding, and without consideration of the possible issues here presented. In *Wright* v. *Miller,* 7 N. Y. Ch. 256, 262, the court said: "The answer of an infant, by his guardian, is in truth the answer of the guardian and not of the infant; hence the infant is not bound by his answer, it cannot be read against him, and no decree can be made on the admission of facts which it contained. Where there are infant defendants, and it is necessary, in order to entitle the complainant to the relief he prays, that certain facts should be before the court, such facts, although they might be the subject of admission on the part of the adults, must be proved against the infants." *Seaton* v. *Tohill* (Colo. App.) 53 Pac. 170; *Phillips* v. *Dusenberry,* 8 Hun. 348; *Sherman* v. *Wright,* 49 N. Y. 227. In *Laidley* v. *Kline,* 8 W. Va. 218, it is said that infants are deemed and taken to be incapable of making contracts or admissions in civil transactions, ordinarily, that are binding upon them. In *Seaton* v. *Tohill* (Colo. App.) 53 Pac. 170, it is said: "The rule is well settled that an infant cannot be bound by the admissions of his guardian, unless they are for his benefit, nor by his errors or omissions in his answer and pleadings. The court will suffer no advantage to be taken of those acting in the infant's behalf, to the detriment of the infant." *Lloyd* v. *Kirkwood,* 112 Ill. 338; *Hutchinson* v. *McLaughlin* (Colo. Sup.) 25 Pac. 317, 11 L. R. A. 287;

*Daingerfield* v. *Smith,* 83 Va. 91, 1 S. E. 599; *Rarick* v. *Vandevier* (Colo. App.) 52 Pac. 743; *Cooper* v. *Mayhew,* 40 Mich. 529; 1 Enc. of Evidence, 460, 568, and note; 1 Am. & Eng. Enc. L. 678, and cases cited.

Upon the entire evidence, we think the case was properly sub-mitted to the jury. The judgment appealed from is affirmed. All concur.