[File No. 6563.]

JOAN SVIHOVEC, Elaine Svihovec, Eugene Svihovec, and Valeria Svihovec, by H. L. Alkire, Their General Guardian, Respondents, v. WOODMEN ACCIDENT COMPANY, a Corporation, Appellant.

(285 N. W. 447.)

Opinion filed February 20, 1939.   Rehearing denied May 1, 1939.

*Dullam & Young,* for appellant.

*Jacobsen & Murray,* for respondents.

BURKE, J.   Joan, Elaine, Eugene and Valeria Svihovec brought this action by their general guardian as beneficiaries of a contract of insurance, issued by the defendant to their father, Charles B. Svihovec, Jr., insuring the said Charles B. Svihovec, Jr., against loss of life by "violent, external and accidental means."   By specific exceptions the policy excluded from coverage, death by suicide or death due to the intentional acts of the insured or any other person.   Under the pleadings but two facts were put at issue, the fact of the death of the insured, and the cause of his death.   It is alleged in the complaint: "That on or about the 4th day of November, 1936, in the county of Hettinger and state of North Dakota, while said policy was in full force the said Charles B. Svihovec, Jr., received a personal injury, through violent external and accidental means which injury did then and there cause the death and the loss of life of the said Charles B. Svihovec, Jr."

In its answer, defendant "Alleges that it is informed and believes that if the said insured died on the 4th day of November, 1936, or at

any other time or at all, his death was due to suicide and to a violation of the laws of the state of North Dakota prohibiting the taking of one's own life, and to an intentional act of the insured or of another." Upon the trial defendant admitted the fact of the death of the insured, and whether his death was due to violent, external and accidental means or to causes excluded from coverage by the exceptions in the policy became the sole question at issue.

At the close of plaintiff's case, both sides rested and the defendant moved the court for a directed verdict. The motion was denied and the jury returned a verdict in favor of the plaintiff for the full amount of the policy and interest. No motion for a new trial was made and the appeal is from the judgment. A disposition of this case requires a review of the circumstances surrounding the death of the insured as they are disclosed by the record.

Charles B. Svihovec, Jr., a widower, and one Fred Miller, a bachelor, during the summer of 1936 resided on and farmed a tract of land located about five miles southeast of Mott, North Dakota. They had had no crop that year and had made up their minds to migrate westward. About October 30th, 1936, they came to the place of business of one Arnold Rounds in Mott, and while there, Miller, after consulting with Svihovec, purchased a 32-caliber Iver Johnson revolver. After the purchase had been made he held the gun in his hand, and turning to Svihovec, said, "I wonder how he will like this." On November 4th, 1936, Svihovec and Miller ate "dinner" with Emil Svihovec, Charles' father, at his farm home, about seventeen miles southwest of Mott. They told Emil Svihovec they were leaving the following day for the west. After eating and saying goodbye, they left, and going back to Mott, called at the filling station of one Reuben Mehrer with whom they visited until about 1:30 P. M. when they left for their home.

At about 2:10 P. M. J. H. Blank, sheriff of Hettinger county, received a telephone call from a Mrs. John Miller, telling of a fire at the place occupied by Svihovec and Miller. Matt Meisner, Mott fire marshal, had received a call from an unknown source, notifying him of the fire at about the same time. Meisner arrived at the fire first, followed immediately by Blank. When Meisner arrived, the house was almost completely destroyed. Only the frame remained standing. The presence of bodies in the house was immediately discovered and the

efforts of the firemen were directed to cooling that corner of the house where the bodies were located so they could be removed. The bodies were those of Svihovec and Miller. They were taken from the house at about 2:30 P. M. The bodies had been in the southeast corner of the house. Miller's body was three or four feet south and west of the door and Svihovec's was three or four feet west of Miller's. The door was located near the south side of the east front of the house. Svihovec's car and Miller's car were both on the premises and located within twenty or thirty feet of the house. In Svihovec's car were some clothes and a crate of chickens. In Miller's car were some clothes and a small trunk.

Doctor Maerklein of Mott performed an autopsy on the bodies the following day. Parts of both bodies were very badly burned, the legs being completely consumed from the knees down. Other parts of the bodies were burned to a much less degree, and upon some parts of both bodies the clothes were still intact. It was discovered that both men had been shot. A bullet had entered Svihovec's body just below and inside the left nipple. It had pieced the heart and the left lung, and come to rest near the spinal column about two inches to the left of the point of entry and upon the same horizontal plane. Miller's body showed two wounds, one in the skull which could not be positively identified as a bullet wound and a bullet wound in the chest. This bullet had entered just below his heart and had taken a course which was sharply downward. The bullet found in Svihovec's body was 32-caliber bullet. That which caused Miller's wound was not found. At the time the bodies were removed, no gun was seen by Blank or Meisner near the bodies, nor in the room in which the bodies were found. A 32-caliber revolver was reported to have been found upon the premises on the following day and it was established that this gun was not the gun which Miller had purchased a few days before. It was the opinion of Doctor Maerklein and the fire marshal that the fire must have been a gasoline or oil fire because of the intense heat that had been generated in a fire of such short duration. There was no gasoline or kerosene stove in the house. It was reported that some empty cans were found upon the premises but not in the room where the bodies were found. Svihovec was right handed and it was the doctor's opinion that he could not have fired the shot which caused his wound unless he pulled the trig-

ger with his thumb. It was also the doctor's opinion that Svihovec died instantly as a result of a gunshot wound, that Miller's injury was fatal, but probably did not cause instant death.

The defendant specifies as error that the evidence is insufficient to sustain the verdict in that, "It appears conclusively that the death of the insured was due to his suicide or the intentional act of the insured or the intentional act of another person."

The rule announced by this court in Stevens v. Continental Casualty Co. 12 N. D. 463, 97 N. W. 862, gave to the presumption in favor of accidental death the weight of affirmative evidence. It was there held that proof of death by gunshot wound, aided by this presumption, was sufficient to establish a prima facie case of accidental death, and that a verdict founded upon such proof and presumption would not be set aside unless the facts and circumstances surrounding the death could not be reconciled with any reasonable theory of accidental or nonintentional injury. Defendant contends for a modification of this rule and its brief presents a scholarly and persuasive argument in support of that contention. Despite the logic of defendant's argument and the weight of the authority presented to support it, we feel we must adhere to the rule above set forth. That rule was affirmed by this court in Clemens v. Royal Neighbors, 14 N. D. 116, 103 N. W. 402, 8 Ann. Cas. 1111, and it follows as a fair construction of §§ 7934 and 7936, N. D. Comp. Laws 1913.

It is clear that the burden was upon the defendant to establish that the death of the insured was due to his suicide or the intentional act of another person. Stevens v. Continental Casualty Co. and Clemens v. Royal Neighbors, supra; Paulsen v. Modern Woodmen, 21 N. D. 235, 130 N. W. 231; Flath v. Bankers Casualty Co. 49 N. D. 1053, 194 N. W. 739; Smith v. Maryland Casualty Co. 63 N. D. 99, 246 N. W. 451. However, where, as in this case, the defendant has an affirmative plea, the facts to support that plea may be established by plaintiff's testimony. Wigmore, Evidence, 2d ed. § 2495.

The question for determination, therefore, may be resolved as follows: Can the facts established by the plaintiff in this case be reconciled with any reasonable theory of accidental or nonintentional injury? If they can, the judgment must be affirmed; if they cannot, it must be reversed.

The circumstances surrounding the death of the insured and his companion dovetail into a perfect pattern of intentional homicide. The location of the wounds they received indicates that the gun from which the fatal shots were fired was held in the hands of a skilled marksman, who shot with intent to kill. The remark made by Miller to Svihovec at the time they purchased the revolver, just a few days previously, would indicate that they were either considering the need for defending themselves against attack or planning to attack another person. The fact that both men were killed indicates that the motive to kill existed as to both or that either one or the other was killed as a part of a plan to conceal a crime. The fact that the killing was immediately followed by a fire of apparently incendiary origin can only be interpreted as an attempt to destroy the evidence of the homicide.

The only theory of accidental death presented to the court is that the shot or shots which killed these men were fired by some hunter in the neighborhood. For us to assume, however, that a stray bullet or bullets, following a random course across the countryside could set in motion a chain of circumstances so purposeful in implication, would take us away from the field of rational inferences based on human experience and into that of speculation upon fantastic possibility. We can conceive of no theory of accidental or nonintentional injury consistent with the proof. We determine, therefore, that it is shown as a matter of law, that the death of the insured was due to an intentional act and was not accidental; that under the exceptions of the policy sued upon, plaintiff's right to recover is thereby defeated. The judgment will be reversed and the case dismissed.

NUESSLE, Ch. J., and BURR, CHRISTIANSON, and MORRIS, JJ., concur.