Faye R. BEAVER, Appellant,

v.

FIDELITY LIFE ASSOCIATION, Appellee.

No. 7070.

United States Court of Appeals Tenth Circuit.

Jan. 9, 1963.

**112**

Donald C. Vosburgh, Fredonia, Kan. (Thomas A. Wood, Wichita, Kan., with him on the brief), for appellant.

Clifford L. Malone, Wichita, Kan. (Charles E. Jones and John S. Seeber, Wichita, Kan., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment for the defendant on a jury verdict, in a diversity suit on the double indemnity provisions of two Kansas life insurance contracts. The critical provisions sued upon provide in conventional terms for double the amount of the face value of the policies, if death resulted "directly and independently of all other causes, * * * effected solely through external, violent and accidental means," provided that the insurer should not be liable thereunder for any payment, if death "shall directly or indirectly result from * * * self-destruction while sane or insane." The plaintiff claimed that death resulted from accidental means within the terms of the policy, and not from self-destruction. The defendant specifically denied the claim, and alleged that death did result from self-destruction. The case was submitted to the jury on a form for special verdict, requiring the jury to specifically answer whether death resulted from suicide or accident. The jury's answer was, "suicide."

On trial, the issuance of the policies, with the double indemnity provisions, was stipulated. It was also agreed that while the policies were in force, the insured died "as a result of a bullet entering his head." The trial Court instructed the jury in accordance with the stipulations, and further told them that the burden was on the plaintiff to establish, by a preponderance of the evidence that the death of the insured was accidental, within the terms of the policy. And, in that connection, the jury was told: "There is, under ordinary circumstances, a presumption against suicide.

This presumption, like any presumption, is a conclusion which the law requires the jury to make from particular facts in the absence of convincing evidence to the contrary. The presumption continues in effect until, and only until, it is overcome or outweighed by evidence to the contrary. Unless so outweighed, the jury is bound to find in accordance with the presumption; but if you believe that evidence to the contrary overcomes the presumption, then the presumption no longer exists and you should find in accordance with the weight of the evidence."

The beneficiary did not except or object to the quoted instruction on the theory of presumption, but did object throughout to the ruling of the Court on the burden of proof. Her contention was and is, to the effect that, having established that death resulted from external and violent means, i. e., a gunshot wound, the traditional presumption against suicide and in favor of accidental death operated as affirmative evidence to prove her case for accidental death, and the burden shifted to the insurer to show by a preponderance of the evidence that death resulted from causes excepted from the coverage of the policies, i. e., suicide. Inasmuch as the burden of proof may very well depend upon the evidential value of the presumption, we must consider the correctness of the trial Court's instruction with respect thereto.

As we read the instructions, they imposed the burden of proving accidental death upon the beneficiary, but gave her the benefit of the mandatory presumption in favor of accidental death, until it was overcome by contravailing evidence to the satisfaction of the jury. The Court thus impliedly ruled that contravailing evidence was sufficient to overcome the presumption (otherwise, the Court would have been required to direct a verdict for the beneficiary) but the jury was left to decide whether it had, in fact, been overcome. If they so found, the presumption no longer existed, and they were then to decide the issue in accordance with the weight of the evidence.

The law has raised up numerous presumptions, either for procedural convenience or in response to recognized social policies, or a combination of the two. The commentators have classified presumptions of this type into four different categories for evidential purposes. See: American Law Institute, Model Code of Evidence (Adopted 1942), Foreword, p. 52, and Ch. 8, p. 311; and see also Hinds v. John Hancock Mutual Life Insurance Co., 155 Me. 349, 155 A.2d 721, 85 A.L.R.2d 705. The courts have roughly classified them into two categories: (1) as a procedural tool for ordering proof, which requires a finding in favor of the presumption, unless and until some creditable evidence to the contrary is produced, in which event the presumption disappears and the Court instructs the jury as if it never existed; See: N. Y. Life Ins. Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726; O'Brien v. Equitable Life Assur. Soc. of United States, 8 Cir., 212 F.2d 383; and, Boswell v. Gulf Life Insurance Company, 5 Cir., 227 F.2d 578. And see: American Law Institute, Model Code of Evidence, Ch. 8, p. 309. (2) as a rule of affirmative evidence, which persists to sustain the burden of proving accidental death, until outweighed by the preponderance of the evidence of suicide, i. e., it is to be considered as evidence against evidence. Lewis v. New York Life Ins. Co., 113 Mont. 151, 124 P.2d 579; Wyckoff v. Mutual Life Ins. Co. of New York, 173 Or. 592, 147 P.2d 227; Allison v. Bankers Life Co., 230 Iowa 995, 299 N.W. 899; and Mutual Life Ins. Co. v. Maddox, 221 Ala. 292, 128 So. 383. Cf. Atchison, T. & S. F. Ry. Co. v. Geiser, 68 Kan. 281, 75 P. 68. Some courts and legal writers support appellant's theory of this case, by utilizing the presumption to shift "the burden to the insurer to establish that the death of the insured was due to his suicide." Dick v. New York Life Ins. Co., 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (following North Dakota law); and see:

Svihovec v. Woodmen Acc. Co., 69 N.D. 259, 285 N.W. 447. A renouned scholar and commentator on the law of evidence has suggested that in situations like ours, where a presumption owes its origin to an important social policy, it should operate to fix the burden of persuasion. See: Morgan, Presumptions and Burden of Proof, 47 Harv.Law Rev. 59, 83; and see also 44 Harv.Law Rev. 906; and 50 Harv.Law Rev. 909. The majority of the courts seem to have embraced some form of the procedural concept. See: 95 A.L.R. 878; 103 A.L.R. 185; 158 A.L.R. 747; and 12 A.L.R.2d 1264.

The latest concept, and the one which seems most likely to prevail, is found in Rule 14 of the Uniform Rules of Evidence, promulgated by the National Conference of Commissioners on Uniform State Laws, which provides: "Subject to Rule 16, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the non-existence of the presumed fact is upon the party against whom the presumption operates, (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the non-existence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved." See: Hinds v. John Hancock Mutual Life Insurance Co., supra.

■ ■ The trial Court's instruction appears to be a hybrid of the "procedural" and "evidence" theories of presumption, in the sense that it imposed the burden of proving accidental death on the plaintiff, but gave her the benefit of the presumption as evidence, until and unless the jury was convinced of its non-existence by a preponderance of the contravailing evidence. In this diversity suit, we have no province to prescribe a rule of evidence for the governance of this trial; rather, our sole function is to determine whether the trial Court's instructions are in accordance with applicable Kansas law. If so, we must assume that the jury understood and applied them in arriving at its verdict.

■ General case law recognizes a clear and rational distinction between suits on insurance contracts providing for stipulated benefits in the event of death, but excepting death from enumerated causes, and contracts like ours, which insure against death effected solely through external, violent and accidental means, but which contain a provision avoiding the policy, if the insured dies by his own act. As to the former contracts, the burden of proving suicide as an exception to the coverage of the policy is upon the insurer; whereas, under the latter contracts, the burden is upon the beneficiary to prove accidental death, within the terms of the policy. Hinds v. John Hancock Mutual Life Insurance Co., supra; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724; Scales v. Prudential Ins. Co. of America, 5 Cir., 109 F.2d 119; Rast v. Mutual Life Ins. Co. of New York, 4 Cir., 112 F.2d 769; New York Life Ins. Co. v. Taylor, 79 U.S. App.D.C. 66, 147 F.2d 297; Zuckerman v. Underwriters at Lloyd's London, 42 Cal.2d 460, 267 P.2d 777; and United Insurance Company v. Nicholson, D.C. Mun.App., 119 A.2d 925. Under either contract of insurance, the burden is upon the plaintiff to prove her case by bringing the loss within the coverage of the policy. In the first instance, proof of death alone brings the loss within the policy, and the conventional burden is upon the insurer to prove the exception. In the latter instance, since the risk insured against is not death alone, but accidental death, it is, of course, incumbent upon the plaintiff to prove that death was accidental. Zuckerman v. Underwriters at Lloyd's London, supra.

While Kansas has not explicitly recognized the distinction between the two contracts in terms of burden of proof, the distinction is, we think, inherent in its decisional law. Cf. Mutual Life Ins. Co. v. Wiswell, 56 Kan. 765, 44 P. 996; O'Brien v. New England Mut. Life Insurance Co., 109 Kan. 138, 197 P. 1100; and Broyles v. Order of United Commercial Travelers, 155 Kan. 74, 122 P.2d 763. The Broyles case seems most like ours, and it apparently influenced the trial Court's instructions on the theory of the presumption and burden of proof. In that case, the Kansas Court quoted "the general rule that in an action on a policy insuring against death caused solely by external, violent, and accidental means, the burden of proof is on the plaintiff to show from all the evidence that the death of the insured was the result of accidental as well as external and violent means, but that where death by unexplained, violent, and external means is established, a presumption is thereby created or prima facie proof is thereby made of the fact that the injuries were accidental, without direct and positive testimony on that point, since the law will not presume that the injuries were inflicted intentionally by the deceased or by some other person." (122 P.2d p. 766).

There is also some indication that the presumption may be utilized to balance the probabilities in favor of accidental death. Hawkins v. New York Life Ins. Co. of New York, N. Y., 176 Kan. 24, 269 P.2d 389 and cases there cited. It has also been referred to as "an inference to be drawn from the universally recognized fact that the instinctive love of life is strong in the normal person. It is a matter to be considered with others in arriving at the most probable solution of a question which cannot be determined with absolute certainty." O'Brien v. New England Mut. Life Ins. Co., supra.

From this, it seems fair to assume that Kansas tends toward the evidence theory of the presumption, and it may be that the trial Court's instruc-

tion did not accord the presumption the evidential weight and persistence which the Kansas decisions are inclined to give it. But even so, there is nothing in the Kansas decisions to support the theory that the presumption is to be treated as affirmative evidence to shift the traditional burden from the plaintiff to the defendant; rather, we think, the Kansas decisions support the Court's ruling in that respect.

The judgment is affirmed.