**Mary C. WEBER, Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, a Corporation, Appellee.**

**No. 8639.**

United States Court of Appeals
Tenth Circuit.

June 22, 1967.

Rehearing Denied July 19, 1967.

E. P. Ledbetter, Oklahoma City, Okl., (Ledbetter & Ledbetter and Eugene P. Ledbetter, Jr., Oklahoma City, Okl., were with him on the brief) for appellant.

Truman B. Rucker, Tulsa, Okl. (Donald G. Hopkins, Tulsa, Okl., was with him on the brief) for appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and BROWN, District Judge.

WESLEY E. BROWN, District Judge.

This is an action to recover the proceeds alleged to be due appellant as beneficiary under an accident insurance policy insuring her son Raymond L. Weber against accidental bodily injury and death.

The issue to be tried by the jury as stated by the court and not questioned by either appellant or appellee was whether the insured "received bodily injury caused by accident; to-wit: drowning, resulting in his death, directly and independently of all other causes  *  *  * " or whether his death was caused by a "heart attack," and not drowning.

The parties stipulated that the policy was issued by Continental Casualty Company covering the deceased, Raymond L. Weber, with Mary C. Weber as beneficiary and that the policy was in full force

and effect on the date of the death of Raymond L. Weber.

The policy provided for payments to the insured or his benficiary for "bodily injury caused by an accident and resulting directly and independently of all other causes in loss covered by the policy."

On May 5, 1964, Mr. Weber left work in mid-day, telling his secretary he wasn't feeling well. When he failed to return, on May 8, 1964, his immediate supervisor went to Weber's apartment, where he lived alone. His body was discovered in the locked bathroom, face down in the bathtub three-fourths full of water up to the overflow drain, his head toward the drain end of the tub. He lay partly on his right side, with his legs cramped under him. His nose and mouth were completely under water. The body bore no indications of violence. One mortician testified there was a laceration or red mark 1½" long near the front of the forehead, although the doctor who conducted the autopsy said he found no laceration. As the body was removed from the tub, a quantity of water came from his mouth, described variously as from one and one-half cups to a quart. The water in the tub was reddish, with a white frothy foam on it.

Two doctors testified that Weber died of drowning and two other doctors testified he died from a "heart attack."

The jury returned a verdict for the defendant and plaintiff has appealed.

The only questions on appeal concern the trial court's instructions to the jury.

■ It appears that the master policy was issued to decedent's employer at Pasadena, California, and delivered there, that Weber received his Certificate of Participation there as a California resident, that premiums were remitted from there, and that the insured died there. The substantive rights and liabilities of the parties are governed by the law of the State of California. See John Hancock Mut. Life Ins. Co. v. Tuggle, 303 F.2d 113 (10th Cir. 1962).

■ Our sole function here is to determine whether the trial court's instructions are in accordance with applicable laws. If so, we must assume that the jury understood the instructions and applied them in arriving at its verdict. Beaver v. Fidelity Life Association, 313 F.2d 111 (10th Cir. 1963).

Appellant complains of the trial court's instructions in summary, because,

(a) her requested instructions concerning a presumption of accidental death of the insured were not given;

(b) Instruction No. 6 advised the jury that there was no presumption Weber died accidentally; and

(c) Instruction No. 15 was contrary to California law and inconsistent with the instructed definition of "proximate cause."

The first two contentions of the appellant outlined above deal with the same issue, namely, that the jury should have been instructed to apply a presumption of accidental death. The trial court refused to so instruct the jury [1] and specifically advised them in Instruction No. 6 that no presumptions existed either of an accident or of "natural causes;" we set it out as follows:

"In some instances there arises a legal presumption of the cause of death but in this case you are told there is no such presumption. In other words you may not presume that Raymond L. Weber died of natural causes; neither may you presume that accidental drowning killed him."

Appellant's contention rests on two premises: first, that California law governs the use and effect of rebuttable presumptions arising from the evidence, as opposed to the law of the forum, and secondly, that under that law, a presumption of accidental death arises from the facts of the instant case.

Regarding the first point, the choice of laws issue, the Oklahoma Supreme Court does not appear to have passed upon the question of what law governs presump-

1. Plaintiff's requested instruction, No. 7, infra.

tions arising from the evidence, the law of the foreign jurisdiction whose substantive law is being applied, or that of the forum. The Restatement of Conflict of Laws, § 595(2), provides that the law of the forum controls the use and effect of rebuttable presumptions. Whether a presumption of the foreign jurisdiction must be recognized by the forum court often turns on whether it is characterized by that court as a rule of procedure or of law. See, e. g., United Air Lines, Inc. v. Wiener, 335 F.2d 379 at 391 (9th Cir. 1964). Some courts have disregarded this ofttimes arbitrary substance—procedure distinction, where the foreign law presumption, though arguably procedural in nature, closely affects the substantive right in suit, or is necessary "to preserve the integrity" of that right. See Annotation, 168 A.L.R. 191 at 192.

The broadly opposing views of the office of presumptions are usefully summarized in Beaver v. Fidelity Life Association, 313 F.2d 111 (10th Cir. 1963):

"(1) [A]s a procedural tool for ordering proof, which requires a finding in favor of the presumption, unless and until some creditable evidence to the contrary is produced, in which event the presumption disappears and the Court instructs the jury as if it never existed; [citations omitted] (2) as a rule of affirmative evidence, which persists to sustain the burden of proving accidental death, until outweighed by the preponderance of the evidence of suicide. [citations omitted.]" 313 F.2d at 113.

Under the California view, presumptions constitute affirmative evidence to be weighed by the jury against other evidence. Scott v. Burke, 39 Cal.2d 388, 247 P.2d 313 (1952). In Oklahoma, a presumption is merely a "procedural tool for ordering proof," and does not constitute affirmative evidence. See Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65, 32 A.L.R. 1490, wherein the court states:

"A presumption cannot in itself possess probative weight, but merely necessitates evidence to meet the prima facie case which it creates. When evi-

dence is introduced rebutting the presumption, the presumption disappears, leaving in evidence the basic facts which are to be weighed." 226 P. at 68.

In our view, under either of the tests stated above, the California view regarding the rebuttable presumption sought by plaintiff does not apply. Oklahoma clearly regards rebuttable presumptions as mere procedural means for ordering the presentation of proof. Hence, the presumption is only a matter of procedure, and not a part of the substantive law of California that the Oklahoma courts would apply. Nor does the presumption at issue closely affect the substantive right in suit. It has no important bearing upon either the appellant's rights under the policy, or upon their enforcement. It does not shift the burden of proof of any element of appellant's case. It only requires the jury, in weighing the evidence, to give probative weight to an inference of accidental death from the facts established by plaintiff. The inference remains a rebuttable one. The lack of an instructed presumption does not diminish the intrinsic probative worth of the evidence presented by appellant.

We hold, secondly, that the facts herein do not warrant a presumption of accidental death, even under California law. That presumption is proper where the cause of death is unexplained, and suicide one of the postulated causes upon which the case is argued. See, e. g., Wilkinson v. Standard Accident Insurance Company, 180 Cal. 252, 180 P. 607 (1919). No question or suspicion of suicide or contributory negligence exists here. Where the only arguable alternative causes of death are physical disease or infirmity, and accidental means, here drowning, and there is no question whatever of self-inflicted death or carelessness there is no occasion for a presumption of accidental death. It is in substance a presumption that the deceased did not by his own actions take his own life, and it is based on man's natural love of life, which all persons are deemed to share absent strong evidence to the

contrary. Appellant made no suggestion at the trial that Weber's death was self-inflicted or even a result of his own carelessness; accordingly, there was no basis for the presumption appellant seeks.

Further, it was not error for the court to refuse appellant's requested Instruction No. 7, upon which error is based. The instruction reads:

"You are instructed if you find from the evidence that the death of the insured was caused by violent and external means as herein defined, but the means by which the death occurred is unexplained, the presumption is that the death was accidental."

By the terms of the instruction, the presumption arises only if and when the jury determines the insured's death was "caused by violent and external means," here, by drowning. The instruction overlooks the fact that once the jury had determined this, appellant's case would have been won. Death from "violent and external means" could mean only drowning under the instructions in this case, for the only other postulated cause of death was heart disease. If the jury had determined that Weber drowned, nothing remained to be proved. The requested presumption would be of no effect, for the appellant's case would have been complete.

Appellant's third contention deals with the court's instruction on "proximate cause." The court instructed the jury that it was for them to find and so say by their verdict whether the death of Raymond L. Weber was proximately caused by accidental drowning or whether his demise was the approximate result of a heart attack, and that where different forces and conditions occur or cooperate in producing death one which is accidental and the other disease, it becomes necessary to determine whether the accident was the direct cause or the accident the remote cause. The court further advised that the presence of a pre-exist-

ing disease will not relieve the insurer from liability if accidental drowning was the proximate cause of his death even though the heart attack contributed to the cause of death and conversely that if the heart attack was the proximate cause of death and an accident contributed to the attack the defendant would not be liable.[2]

Instruction No. 15 complained of by appellant reads as follows:

"If you find that the heart attack put in motion a chain of events which caused an accident, and thereafter the insured died, the heart attack may be the proximate cause of death. In other words, no recovery may be had even if an accident appears to contribute to the cause of death, if a heart attack sets in progress the chain of events leading to death, or if the heart attack is the prime or moving cause.

"Conversely, if you find that an accident put in motion a chain of events which caused a heart attack and thereafter the insured died, the accident may be the proximate cause of death. In other words, recovery may be had even if a heart attack appears to contribute to the cause of death if the accident sets in progress the chain of events leading to death or if the accident is the prime or moving cause."

In Instruction No. 18, the court defined proximate cause as follows:

"The terms 'immediate cause', 'proximate cause' and 'efficient cause' are used herein interchangeably as synonymous and, as applied to this case, mean that cause, which in natural and continuous sequence, unbroken by an intervening cause, produced the death and without which the death would not have occurred."

Instruction Nos. 21, 22 and 23 read as follows:

"No. 21. You are further instructed that one who comes to involuntary death by drowning suffers death

---

2. The trial court's Instruction No. 12 reads:
"The jury is instructed that the insurer under life accident policy is not liable

for death by mere disease or bodily infirmity, even in the absence of a usual clause expressly excluding disease from among the risks assumed."

'through injury caused by an accident' with the meaning of that phrase as used in the policy of insurance involved herein."

"No. 22. We are here concerned with the proximate cause of the death of Raymond L. Weber. If the jury finds that he suffered an accidental injury causing his death directly and independently of all other causes then and in that event it is immaterial as to what caused the accident."

"No. 23. Keeping the foregoing instructions in mind should the jury herein find by a preponderance of the evidence that Raymond L. Weber departed this life as the proximate result of accidental drowning, then your verdict should be for the plaintiff and against the defendant. However, should the jury fail to so find or should the jury find that Raymond L. Weber's death was proximately caused by a heart attack then in the later event your verdict should be for the defendant."

The trial court instructed the jury to consider the instructions as a whole and not single out one instruction alone as stating the law.

In the context of this case the California law is not inconsistent with the instructions of the trial court. On the contrary the trial court followed the California law in the instructions. The second paragraph of Instruction No. 15 summarizes Zuckerman v. Underwriters at Lloyd's London, 42 Cal.2d 460, 267 P.2d 777 (1954) wherein, construing a policy of accident insurance, the court stated:

"A denial that death was occasioned by a bodily injury within the meaning of the policy is a sufficient plea. An additional defense that it was the result of intentional self-injury or disease does not shift the burden of proof to the defendant." [citations omitted]

The trial court in its instructions followed the rule set forth in Brooks v. Metropolitan Life Insurance Company, 27 Cal.2d 305, 163 P.2d 689, namely: that the presence of pre-existing disease or infirmity will not relieve the insurer from liability if the accident is the proximate cause of death. This is so even though a diseased or infirmed condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause.

The first paragraph of Instruction 15 is but the converse of the second paragraph, addressed to the question of liability if disease, and not accident, set in motion the fatal chain of events. Appellant objects, citing Kinsey v. Pacific Mutual Life Insurance Company, 178 Cal. 153, 172 P. 1098 (1918), for the proposition that if the insured drowned as the result of an accident, the nature of the accident that caused him to drown is immaterial. This argument overlooks the fact that the precise question in the instant case was whether the insured did drown. Further, in Instruction 22, the court instructed that if death resulted from accidental injury, i. e., drowning, then the cause of that accident is immaterial. Other instructions, including Nos. 18, and 21, emphasized to the jury they were to determine the direct, proximate cause of the death, and were not to delve into the infinite to determine the causes of the cause of death.

The paragraph in Instruction No. 15 of which appellant complains merely states that if a heart attack sets in progress a fatal chain of events, the resulting death does not become "accidental" merely because some accident happens to occur in that chain of events. Whatever claimed ambiguity in that instruction might be unfavorable to appellant, it is clearly resolved by the court's express instructions that death by drowning is accidental death (No. 21) and that if the direct and independent cause of death was by accidental drowning, the cause of the accident was immaterial. (No. 22).

The trial court in the posture of this case properly advised the jury that if drowning was the proximate cause of death of the insured, the appellant must recover. Conversely, if "heart disease"

was the proximate cause of death of the insured, there could be no recovery.

In addition, the court properly explained the "chain of events" and the theory of remote and proximate cause in order that the jury could resolve the specific question of whether death of the insured was caused by drowning or heart disease. The jury resolved the issue against appellant.

Affirmed.