PEARL S. HARPER *v.* JEFFERSON STANDARD LIFE INSURANCE COMPANY

(No. 8654)

Submitted January 26, 1938. Decided March 15, 1938.

*Brown, Jackson & Knight,* for plaintiff in error.
*File, File & Scherer,* for defendant in error.

FOX, JUDGE:

The Jefferson Standard Life Insurance Company prosecutes this writ of error to a judgment of the circuit court of Raleigh County, entered on January 19, 1937 on the verdict of a jury in favor of Pearl S. Harper in the sum of $5,108.04. The plaintiff, Pearl S. Harper, was the beneficiary under a policy of insurance issued by the insurance company on the life of French A. Harper, said policy being for the sum of $2500.00, in which was contained a double indemnity clause in the words following:

"The Company will pay the beneficiary in full settlement of all claims hereunder double the

face amount of this policy, if, * * * the death of the Insured results from bodily injury within ninety days after the occurrence of such injury, provided death results directly and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means. Except, these provisions do not apply * * * in case death results from bodily injury inflicted by the Insured himself or intentionally by another person, * * *."

The question now before us involves the construction of this provision of the policy and its application to the facts of the case. The verdict and judgment covers double the face amount of the policy, and the dispute is limited to amount included in the judgment on account of the policy provision quoted above. There is no denial of liability for the face amount of the policy, independently of this provision.

On October 26, 1935, in the nighttime, the insured, French A. Harper, was shot and killed by Jesse Scalf. Two bullets entered the body of the insured, one in the head, above the right ear, through the skull and penetrating the brain; the other through the upper part of the left arm, through the side of the chest, penetrating the lungs and possibly some of the larger blood vessels, emerging from the back near the spine, resulting in the death of the insured within a very short time thereafter. There were no eye witnesses to the shooting and we must rely upon the statement of Scalf as to what occurred. From Scalf's statement, it appears that he was on his way from his boarding house to Eccles, and followed a path which led into the road leading from Harper's store to his home, and the fatal episode occurred at the gate which led to Harper's home. It appears that Harper was carrying a flashlight and when he approached his gate, for some reason not disclosed by the evidence, flashed the light in Scalf's face and Scalf immediately fired the shots which resulted in the death of the insured. No words were spoken by either Scalf or Harper, either before or after the shooting. Scalf had been drinking for possibly two weeks and was intoxicated at

the time of the shooting, but no contention is made that he was in such a state of mind as to be incapable of an intentional act. There is no direct testimony that Scalf intended to shoot anyone in particular, nor any evidence negativing such intent. Several months later, when Scalf testified in the case at bar, he stated that he did not know who it was that flashed the light in his face; that he had no reason to believe it was French A. Harper; that he did not recognize the person who flashed the light either before or after the shots were fired; and that if he had known it was French A. Harper, he would not have shot him. The contention of the insurance company is that the killing of Harper was due to the intentional act of Scalf, and comes within the exception of the policy provision quoted above; this is denied by the plaintiff, her contention being that, within the terms of the policy, properly construed, the killing was, as to the insured, accidental.

The burden of showing that the death of the insured was caused by "external, violent, and accidental" means was upon the plaintiff, (*Travelers' Ins. Co.* v. *McConkey,* 127 U. S. 661, 8 S. Ct. 1360, 1363, 32 L. Ed. 308) and a showing of intentional killing by another meets that burden within the meaning of the clause in the policy before us. *Tabor* v. *Commercial Casualty Ins. Co.,* 104 W. Va. 162, 139 S. E. 656, 57 A. L. R. 968. But where a killing is by another, and the exception requires that it be intentional, the burden of showing such intent is on the insurer. *Martin* v. *Mutual Life Ins. Co.,* 106 W. Va. 533, 146 S. E. 53; *Hetzel* v. *Pacific Mutual Life Ins. Co.,* 108 W. Va. 22, 150 S. E. 385. The following authorities sustain this proposition. 1 C. J. 494-7; 8 Couch on Insurance, sec. 2217; *Anthony* v. *Mercantile Mutual Accident Association,* 162 Mass. 354, 38 N. E. 973, 26 L. R. A. 406, 44 Am. St. Rep. 367; *Travelers' Protective Association* v. *Fawcett,* 56 Ind. App. 111, 104 N. E. 991; *Railway Officials' and Employees' Association* v. *Drummond,* 56 Neb. 235, 76 N. W. 562; *Stevens* v. *Continental Casualty Co.,* 12 N. D. 463, 97 N. W. 862; *Olson* v. *Southern Surety Co.,* 201 Iowa 1334, 208 N. W. 213.

The policy in question bound the insurance company to pay to the beneficiary thereunder double the face amount thereof if, while the same remained in force, the death of the insured should result from bodily injury within ninety days from such injury, and result solely through external, violent and accidental means. This is the positive undertaking of the insurance company, but as a limitation thereon, it was provided that the same should not apply in case of the death of the insured resulting from bodily injury inflicted by the insured himself "or intentionally by another person". It seems clear that what the parties to the policy had in mind, as expressed by the provisions thereof, literally interpreted, was to make payment of the double indemnity dependent upon some "external, violent, and accidental" occurrence, and to exclude such payment when death resulted from some act in which the intent of the insured himself, or some other person, was the moving cause of death. However, courts, in keeping with the rule that insurance policies shall be construed in favor of the insured, and for other reasons presently to be defined, have given a liberal construction to policy provisions of this character. While the language used "external, violent, *and* accidental", might justify a holding that the cause of death must be by external force, by violence and through accidental means, the courts have recognized that death or injuries resulting from violence, even if intentional on the part of the person who commits violence, may, as to the injured person, be accidental, and to that extent has weakened the force and application of the exceptions as to intentional acts of another, such as we have in the case at bar. One of the first cases illustrating this tendency is that of *Utter* v. *Travelers' Ins. Co.,* 65 Mich. 545, 32 N. W. 812, 813, 8 Am. St. Rep. 913, decided in 1887, where the policy provided that it should not apply where death was due to "design, either on the part of the insured or any other person." In that case, the insured, Utter, was killed by a police officer who, although he was seeking him for the purpose of arrest, did not know him, and where the evidence was such as to warrant the jury

in finding that he thought he had shot some other person, and it was held that it could not be said, as a matter of law, that there was a design on the part of the police officer to kill Utter. The *Utter* case is followed in *Newsome* v. *Travelers' Ins. Co.*, 143 Ga. 785, 85 S. E. 1035, where there was a clear case of mistaken identity, and to the same effect and under similar circumstances is the case of *General Accident, Fire and Life Assur. Corp.* v. *Hymes*, 77 Okla. 20, 185 Pac. 1085, 8 A. L. R. 318. In *Travelers' Protective Association* v. *Fawcett, supra,* it was held that where the insured was one of several persons in a bank which was robbed, and was killed, it could not be held that the robber intended to kill the insured, and recovery was allowed. In *Mah See* v. *North American Accident Ins. Co.*, 190 Cal. 421, 213 Pac. 42, 26 A. L. R. 123, it was held that "the killing of a person by a shot intentionally aimed at him under the belief that he was another is not within the exemption in an insurance policy from liability for injury inflicted on the insured by any person." In that case, the circumstances were such that the court held that the question of whether or not the assailant intended to kill the insured was one to be determined by the jury, but there was strong dissent from the majority opinion. Lack of necessary intent to kill the insured was held to exist in *Jefferson Standard Life Ins. Co.* v. *Myers*, 256 Ky. 174, 75 S. W. (2d) 1095, where the insured, a deputy sheriff, was one of several officers engaged in an attempt to quell a mine war where numerous shots were fired and there could be no showing as to who fired them, or at whom they were aimed. In *Olson* v. *Southern Surety Company, supra,* the question of whether the injuries of the insured had been sustained from the intentional act of another who was attempting to commit a robbery was held under the evidence to be for the jury. In *Railway Officials and Employers Association* v. *Drummond, supra,* recovery was allowed where there was doubt as to whether death of the insured was intended, but it was clearly stated that if the killing of the insured was intended, there could be no recovery, the exception in that case be-

ing where the death or injury resulted "from the intentional act of the insured or any other person." In *Allen* v. *Travelers' Protective Association*, 163 Iowa 217, 143 N. W. 574, 48 L. R. A. (N. S.) 600, where the language of the exception referred to death or injury "by intentional injuries causing death or disability inflicted by the member or any other person upon him", recovery was allowed where the insured was shot by a burglar who was attempting to escape.

There is, however, another line of cases which, if they do not directly clash with the authorities cited above, do present the question from a different angle. In *Travelers' Ins. Co.* v. *McConkey, supra,* it was held, referring to the insured, "if he was murdered, then his death was caused by intentional injuries inflicted by another person", and to the same effect is *Travelers' Protective Association* v. *Langholz,* 86 Fed. 60. The holding of these cases has been departed from in later decisions for the reason that while there must always be an intent to kill to constitute murder, the actual killing may be, in some circumstances, accidental from the point of view of the victim. In *Hutchcraft* v. *Travelers' Ins. Co.,* 87 Ky. 300, 8 S. W. 570, 12 Am. St. Rep. 484, it was held that where the insured was waylaid and killed for the purpose of robbery, there could be no recovery under provisions of the policy which provided that no claim could be made thereunder where the death of the insured had resulted from "intentional injury inflicted by the assured or any other person". In *Continental Casualty Co.* v. *Cunningham,* 188 Ala. 159, 66 So. 41, L. R. A. 1915A, 538, where the language considered was "the intentional act of the insured or any other person", and where a person who was attempting to escape arrest was shooting at everyone interfering with his flight, and under these circumstances shot the insured, it was held that there could be no recovery, and in *Bryant* v. *Kentucky Central Life and Accident Ins. Co.,* 216 Ky. 806, 288 S. W. 766, where the language of the exception referred to injuries "intentionally inflicted upon the insured by any other sane or insane person * * * or while fighting or violating any law", recovery was denied

where the insured was beaten to death in his home, and the *Hutchcraft* case, *supra,* was cited as authority for the holding.

The question of whether or not the assailant knew by name or otherwise the identity of the insured does not seem to have been considered of importance in the decision of any of the cases cited. These decisions are made to depend upon the intent of the assailant. In the first line of cases cited, recovery is upheld where there has been a mistake in identity which, of course, implies that a certain person was in the mind of the assailant and a mistake made; or where a number of persons were in a position to receive the effect of the assault and the intent of the assailant could not be centered upon one particular person; or where the circumstances were such as to warrant a jury in finding that someone other than the insured was intended to be killed or injured. The second line of cases would impute intent on the part of the assailant to do the thing which results from his act. For reasons which will hereinafter appear, we do not deem it necessary to attempt to reconcile these inconsistent positions.

As we view the case at bar, a different question is presented from those considered in any of the cases cited above. Here, there is no question of mistaken identity. Scalf had no person in mind whom he intended to shoot and therefore, when he shot Harper, he did not mistake him for some other person; there is nothing in the record other than Scalf's statement made many months later that if he had known it was Harper who flashed the light in his face, he would not have shot him, to indicate that he had in mind to shoot anyone other than the person he killed; and there is positive showing that Harper was the only person within the range of Scalf's pistol, thus excluding the theory that the shots may have been intended for some person other than the one he shot. This being the undisputed factual situation, we are driven to the conclusion that Scalf, having had no other particular person in mind whom he intended to kill, intentionally killed the man who flashed the light in his face. There

is nothing in the record from which it may be reasonably inferred that, under the circumstances, he intended to shoot any person other than the one he shot. We cannot say that knowledge on the part of Scalf that it was Harper at whom he was shooting is necessary to create the intent required under the policy provision. Such a holding would be equivalent to saying that if a person of criminal tendencies meets another person on the street whom he does not know and kills him, no intent to commit that crime can, in a civil case, be said to exist where the provision of an insurance policy similar to the one under consideration is before a court, a ruling we are not prepared to make.

The statement of Scalf that had he known it was Harper who flashed the light in his face, he would not have shot him, is of little importance in the decision of this case. It does not lessen the force of the argument that he intended to kill the particular person at whom he fired his pistol, for the reason that there was no other person against whom any such intention could have been directed. Such a statement would have had no weight upon his trial for the criminal offense involved, and is entitled to none here. In the criminal case, the presumption that he intended the natural and probable consequences of his act could have been invoked. It may be that there is no such presumption in this case, but we are not precluded from drawing reasonable inferences of the intent of Scalf by what he did. In the case before us we are dealing with the state of Scalf's mind at the time he killed Harper as the same may be inferred from his acts at that time, and not what he stated months later his intentions were at the time of the killing.

The remaining question is, did Scalf intend to kill the person at whom he directed his shots? There are cases holding that when the act itself is intentional, but by reason of the character of the act, intent to kill could not be reasonably inferred therefrom, the killing is not intentional under the provisions of an insurance policy such as we have before us. *Strother* v. *Business Men's Accident Association*, 193 Mo. App. 718, 188 S. W. 314; *Coo-*

*per* v. *National Life Ins. Co.*, 212 Mo. App. 266, 253 S. W. 465. But can we say that Scalf did not intend to kill the person at whom he shot? He fired two shots at close range, both taking effect in vital organs of the body. What did he intend, if not to kill the victim of his criminal act? In *Gaynor* v. *Travelers' Ins. Co.*, 12 Ga. App. 601, 77 S. E. 1072, the court said:

> "Where one approaches another from the rear and, at a distance of eight or ten feet, deliberately aims and fires a deadly weapon at the person thus approached, and the latter dies from the wound thus inflicted, and nothing more appears, there is a conclusive inference that the person shooting intended to take the life of the person at whom he shot."

The case at bar is not substantially different from the case in which the above holding was made. We think it clear that intent to kill, on the part of Scalf, was present.

While it is true that the provisions of the policy under which the plaintiff claims should be construed in her favor, we are not warranted in giving such provision a construction which does violence to the plain meaning thereof. Under the facts of this case, we are impelled to hold that the insured was killed by the intentional act of Scalf, and therefore the judgment of the circuit court will be reversed, the verdict of the jury set aside and the case remanded for a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*