## NATIONAL MUT. CASUALTY CO. *v.* CLARK.

(In Banc.   April 27, 1942.   Suggestion of Error Overruled June 8,
1942.)

[7 So. (2d) 800.   No. 34914.]

William Harold Cox, of Jackson, and E. LeRoy Allen, of Tulsa, Okla., for appellant.

**L. Percy Quinn** and **John B. Higgins**, of Jackson, and **L. K. Ramsey**, of Forest, for appellee.

32

Stirling & Stirling, of Jackson, for appellee.

Alexander, J., delivered the opinion of the court.

Robert Clark obtained a judgment against the Red Top Cab Company, Inc., in the sum of $2,350 for injuries alleged to have been sustained from an assault committed by a driver for the cab company. Thereupon writ of garnishment was issued to the appellant to enforce the liability alleged to exist under a certain indemnity policy

in which the cab company was the insured. The questions herein discussed were litigated under the issue raised by appellee in his contest of the answer of garnishee disavowing any indebtedness or liability to the cab company under its policy.

An ordinance of the City of Jackson required all taxicab companies operating in this city to post an indemnity bond conditioned to satisfy all judgments rendered against it "for personal injury or property damage caused by the operation" of its taxicabs. Appellant issued to the taxicab company its policy containing the following provision by which it agreed "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."

The issue of liability here is to be determined from a construction of the foregoing provision, interpreted in the light of the stipulation in the record which summarizes the basis for liability in the original suit by appellee against the taxicab company:

"If competent, and subject to proper objection for incompetency or immateriality, it is agreed that the plaintiff was awarded the judgment against the Red Top Cab Company substantially upon proof of these facts to establish the case set forth in his original declaration in suit, viz.:

"That on the evening of February 18, 1941, plaintiff called a Red Top Cab to take him to his home on Ash Street in Jackson, Mississippi; the plaintiff and the driver of the cab had never seen each other prior to this occasion and nothing was said by either of them to the other en route to said destination. The published cab fee for the trip was fifteen cents. Upon arrival at plaintiff's home,

he got out of the back seat of the cab, closed the back door, and handed the cab driver a quarter while the latter sat in the driver's position in the cab. The cab driver asked the plaintiff for more money for the trip, but plaintiff replied that the quarter was all he had. The plaintiff was proceeding to his home and had reached the sidewalk, some 15 feet from the car, preparatory to entering the yard to his home when he was struck from behind by the cab driver with a piece of iron without any provocation or cause whatsoever therefor. After the plaintiff had paid the fare and while he was proceeding around the rear of the cab, the driver cut off his motor, got out of the cab, and got the piece of iron out of the tool box and followed the plaintiff to the point where he struck him from the rear without any further conversation with him or warning to him.''

Let us first examine the evident purpose and legal import of the phrase ''caused by accident and arising out of the ownership, maintenance or use of the automobile.'' Thereafter we may consider whether the accident so arose.

The policy required by the ordinance and issued by appellant is not a general public liability policy as was the case in Robinson v. United States F. & G. Co., 159 Miss. 14, 131 So. 541, 542, which case, moreover, dispels any doubt whether the assault committed upon appellee is an ''accident'' within the meaning of such policies. The ordinance referred to prescribed as a prerequisite to ''the operating of any taxicab in the City of Jackson or over the streets,'' the execution of such indemnity. Its evident purpose was to protect passengers and other persons against the negligent operation of its taxicabs. Emphasis is throughout placed upon the automobile as a unit of liability by provisions requiring the identification of each unit so employed both by its serial number and its title status; by the limitation of liability upon ''each accident;'' and by the condition that ''coverage

in the policy is intended to the herein named Insured only on automobiles and trucks while being operated by the Insured or his employees and within the scope of the Insured's business."

Nor does the policy cover every liability to which insured may be subjected under the doctrine of respondeat superior. It was not intended as a general liability policy nor as an indemnity against liability for the personal misconduct of its employees not engaged in operating one of the listed automobiles as taxicabs. For example, it specifically excludes liability when such taxicab is being tested or demonstrated; when towing a trailer; or operated by a person under 14 years of age; or injury caused to an employee of the insured while engaged in its business; or while such employee is engaged in the operation, maintenance or repair of the automobile specifically covered; or if the automobile is being used for purposes other than the business of the insured. That these exclusions are reasonable and do not diminish the import of the plain language employed, is shown by the holding in Adams v. Maryland Cas. Co., 162 Miss. 237, 139 So. 453, where coverage of truck was held not to apply to a truck with trailer. It is apparent from the enumerated exclusions (1) that the purpose of the policy is to indemnify the insured only for liability arising out of the operation of its taxicabs in the usual business of serving its patrons in transportation for hire; (2) that in each case above enumerated the liability of the taxicab company under the doctrine of respondeat superior is unaffected. Insurance did not cover the conduct of the business (as in Georgia Cas. Co. v. Alden Mills, 156 Miss. 853, 127 So. 555, 73 A. L. R. 408) but the use of the automobile. It is not a sufficient answer that its business is primarily the use of automobiles, because the company could still incur liability for negligence of its servants engaged in clerical or administrative duties as well as for acts arising out of its management. The

phase of the business against which need for protection is indicated is that peculiar to the conduct of a taxicab business, namely the operation of its taxicabs with their potentialities for personal injury. The right of the city to compel the posting of indemnity bonds or policies inheres in its police power since no one has the right to use its streets for private gain free from reasonable regulation. It is the use of its streets and the protection of its citizens against the mismanagement of its vehicles which is being so regulated. People's Taxicab Co. v. Wichita, 140 Kan. 129, 34 P. (2d) 545, 95 A. L. R. 1218, and note p. 1224.

The following cases cited by appellee are readily distinguished. In Merchants Co. v. Hartford Acc. & Indemnity Co., 187 Miss. 301, 188 So. 571, 572, 192 So. 566, a truck of the insured was in its operation driven into a roadside ditch. Poles used to extricate it were left in the road and later caused injury to one using the highway. It is made clear by repeated assertion that the injury to the traveler "had its source in, the use or operation of the automobile." The court was diligent to dissipate any doubt that the chain of causation must not only be direct but must have as its initial link the operation of the truck. The court said: "We would not assent to a contention that the policy liability would extend to something distinctly remote, although within the line of causation."

In Commercial Cas. Ins. Co. v. Skinner, 190 Miss. 533, 1 So. (2d) 225, the point of decision was chiefly procedural but it is appropriate to notice that the liability of the indemnity company was recognized as arising out of a collision between the automobile of the appellee and that of appellant's insured.

In Commercial Cas. Ins. Co. v. Tri-State Transit Co., 190 Miss. 560, 1 So. (2d) 221, 223, 133 A. L. R. 1510, judgment was obtained by a passenger of appellee for injuries originating in and proximately resulting from the neg-

ligent operation of its bus. The liability of appellant as insurer was based upon a finding that the resultant injury and death "was caused by accident arising out of the ownership maintenance or use of the automobile." The court said: "The term 'alleged accident,' as used in the policy, would not require the insurer to defend a suit brought against the insured by an injured person, or the heir-at-law of such person, upon the mere statement, as a conclusion of the pleader, contained in the declaration in such a suit to the effect that the injury or death resulted from an accident growing out of the ownership, maintenance or use of the automobile covered by the policy, but such duty of the insurer to defend is dependent upon whether the facts alleged as such are sufficient to show that the injury or death did in fact result from such an accident or alleged accident."

Baron v. Auto Mutual Indemnity Co., 247 App. Div. 731, 285 N. Y. S. 486, cited by appellant, is directly in point. The action was to enforce payment by an insurer of a judgment obtained by a passenger against a taxicab company, the insured, for injuries suffered from an assault by the driver. Indemnity was provided to cover "injuries caused by operation, maintenance, use, or defective construction of motor vehicle." The court said: "The purpose of the statute . . . is to afford protection from negligent 'operation' or 'use' of a taxicab such as an injury suffered by one of the public, or a passenger, as a consequence of negligent 'operation' or 'use' by the taxi chauffeur; but an unprovoked assault by a chauffeur is not so related to the 'operation' or 'use' of the taxicab as to come within the purpose of the statute." This view was reaffirmed in Green Bus Lines v. Ocean Accident & Guaranty Corp., 257 App. Div. 851, 12 N. Y. S. (2d) 420. See, also, Slaats v. Chicago, M. & St. P. Ry. Co., 149 Iowa, 735, 129 N. W. 63, 47 L. R. A. (N. S.) 129, Ann. Cas. 1912D, 642; O'Neal v. South & W. R. Co., 152 N. C. 404, 67 S. E. 1022; St. Louis, I. M. & S. R. Co. v. J. H.

White & Co., 97 Tex. 493, 80 S. W. 77; State ex rel. Gallagher v. District Court, etc., Mont., 114 P. (2d) 1047; Rose v. Gisi, 139 Neb. 593, 298 N. W. 333; Lima Used Car Exchange Co. v. Hemperly, 120 Ohio St. 400, 166 N. E. 364.

The dangers incident to operating a motor vehicle while negligent are likewise the background for punishment for operating while drunk. In the latter cases it is universally held that liability must arise out of the actual use or mechanical operation of the vehicle. Barrington v. State, 145 Fla. 61, 199 So. 320; People v. Domagala, 123 Misc. 757, 206 N. Y. S. 288; State v. Overbay, 201 Iowa, 758, 206 N. W. 634; State v. Webb, 202 Iowa, 633, 210 N. W. 751, 49 A. L. R. 1389 and note. It could hardly be supposed that anyone would contend that an assault by a drunken driver who quits his car to engage in an altercation would be liable to conviction for drunken driving. It is apposite in this connection to observe that in the initial suit by appellee against the taxicab company, the action was not based upon the use or operation of the taxicab but upon the assault. It is also in point to emphasize that the tort of negligence is distinct from that of assault and battery. So in statutes providing for automatic appointment of the Secretary of State as process agent where injury occurs as a result of the operation or use of a motor vehicle, it is generally held that the purpose of such provision is to provide a method whereby those negligently using the highways of the State may be held to account. Hand v. Frazer, 139 Misc. 446, 248 N. Y. S. 557; Flynn v. Kramer, 271 Mich. 500, 261 N. W. 77.

The basis upon which liability of the taxicab company may rest is in tort and is distinct both in quality and extent from the basis of liability of appellant ex contractu. Its secondary liability is not general and is not co-extensive with the responsibility to which the insured may be subject under the doctrine of respondeat superior.

The driver may continue to "operate" long after the vehicle has ceased. Had the assault occurred while appellee was seeking to procure transportation the insurer would clearly not be liable on the theory that the injury was sustained as a result of the operation or use of the taxicab, and this regardless of whether, pursuant to other principles the master could be held liable for the act of its servant. The contract is neither a general accident policy nor a peace bond and it was not exacted in order to guard against any potential dangers except those peculiar to the vehicular transportation of passengers upon the streets of the city. Nor is the judgment in the tort action res adjudicata in the suit on the contract, unless it be assumed contrary to our view, that the contract covered injuries resulting from personal assault.

There is no place here to invoke a construction favorable to the insured, for ambiguity is not found. In construing a similar policy, it was said in Cronan v. Travelers Indemnity Co., 126 N. J. L. 56, 18 A. (2d) 13, 15, that operation and use held an overlapping meaning and implied an actual control or directing of the mechanism of the vehicle; Blashfield, Cyclopedia of Automobile Law & Practice, sec. 3941. In discussing the matter of interpretation the court said: "Neither the public nor private interest is served by laxity in measuring the insurer's liability in accord with the terms of the contract, as understood by a person of reasonable intelligence."

It is evident that the court in Merchants Co. v. Hartford Acc. & Indemnity Co., supra, was aware that the strain of further extension of the causal chain would disconnect it from its only safe anchorage. This is but another aspect of the controlling truth that if the accident was not at the outset moored to the car's operation the injury would drift beyond the saving reach of the doctrine.

We do not mean to hold that injury from assault may never be covered by such a policy, but that in any event

the vehicle itself must be an active accessory. Liability is denied not because an assault was a factor in the injury but because the operation and use were not factors in the assault.

The unprovoked assault complained of is indeed deplorable and due account thereof was taken by the jury in the tort action. Revulsion against this outrage must be left to dissipate itself in the action against its perpetrator, whose delinquency is now thrown out of focus by our scrutiny of the contract of indemnity. The original use of the taxicab, brought to rest at the completion of its journey, is at most a causa sine qua non and our examination as to appellant's liability may go no further than the terms of its policy. It is not in point whether the assault was related in time or place to the completed use of the taxicab. The test is whether it is causally related to its actual operation. The missing link in the chain of causation is such use or operation.

The learned trial court directed a verdict for appellee. The peremptory instruction requested by appellant ought to have been given.

Reversed and judgment here for appellant.

### Dissenting Opinion.

**Roberds, J.,** delivered a dissenting opinion.

The liability of the insurer, as determined by the majority opinion, is, in my view, too limited. If we consider only the phrase ''. . . caused by accident and arising out of the ownership, maintenance or use of the automobile,'' it is necessary to determine only (1) whether this is an accident within the meaning of the policy arising (2) out of the use of the taxicab.

In Georgia Casualty Company v. Alden Mills, 156 Miss. 853, 127 So. 555, 557, 73 A. L. R. 408, it was said ''Whether an injury is accidental, is to be determined from the standpoint of the person injured. If the injury comes to him through external force, not of his choice or pro-

vocation, then as to him the injury is accidental,'' and held that one assaulted by insured's employees sustained an "accidental injury" within the meaning of a policy indemnifying employer against loss from claims for injuries accidentally suffered by third persons. See Commercial Casualty Ins. Co. v. Tri-State Transit Co. of Louisiana, Inc., 190 Miss. 560, 1 So. (2d) 221, 133 A. L. R. 1510. Therefore, the wrongful assault in the case at bar was an accident as to Clark.

The judgment in favor of Clark and against the Red Top Cab Company, Inc., the insured employer, settled judicially that the injury arose out of the "use of the automobile," and while the employee, the driver of the cab, was acting within the scope of his employment, else the judgment could not have stood. It is not claimed the taxi-driver was the servant of the Cab Company in any capacity other than as such driver. Suppose the driver, because of a dispute over the fare, had wrongfully assaulted the passenger inside the cab before reaching the destination of the passenger, would the policy have covered that liability? The only difference between that case and the one at bar is that in the instant case it was contended the driver was not about his master's business because the assault occurred immediately after the journey's end, but the judgment settled the question against that contention. The driver wrongfully demanded additional taxi fare and assaulted the passenger because he did not pay it. The injury was directly connected with and grew out of the operation of the taxi. Therefore, both requirements of this provision, if standing alone, are satisfied.

But I think that, considering all the provisions of the policy, together with the requirements of the city ordinance, the liability of the insured is broader than the restricted meaning which might reasonably be drawn from the one quoted provision. In addition to that provision of the policy the city ordinance requires that one

seeking permission to use the streets of the City of Jackson for a taxicab business shall first file with the city a bond, or insurance policy, . . . conditioned (that such person) . . . will satisfy any and all judgments or decrees rendered against them to any and all persons, firms, or corporations, for personal injury or property damage, caused by the operation of said vehicles, . . ." and to save harmless the city and its agents from judgments, costs and expenses of defending any action which might be brought "growing out of the operation of said taxi-cabs . . ." by the principal or his agents, "and said indemnity is either for the city or any one obtaining judgment as a result of the operation of said vehicles . . . and the terms and conditions herein shall be a condition of the bond the same as though written into the bond and the liability of the principal fixed on the basis of this ordinance whether the same is expressly incorporated in the bond or not."

There is an endorsement on the policy ". . . that coverage in the policy is intended to the herein Named Insured only on automobiles and trucks while being operated by the Insured or his employees and within the scope of the Insured's business."

This policy was required for the protection of the public. In my opinion it was the intention to impose upon the insurer the same legal liability as that of the insured for damage and injury resulting to third persons from the operation of the taxicabs, and that all of these provisions, considered together, do impose that liability. It is common knowledge that doubtful provisions of insurance policies are construed favorably to the insured and against the insurer.

Smith, C. J., concurs in this dissent.