**HUNTINGTON CAB CO. v. AMERICAN FIDELITY & CASUALTY CO., Inc.**

No. 271.

District Court, S. D. West Virginia.

Dec. 29, 1945.

E. A. Marshall and Jackson N. Huddleston, both of Huntington, W. Va. (Fitzpatrick, Strickling & Marshall, of Huntington, W.Va., on the brief), for plaintiff.

John E. Jenkins, of Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

American Fidelity and Casualty Company insured a fleet of taxicabs owned and operated by Huntington Cab Company to cover bodily injury to persons, accidentally received by reason of the ownership, maintenance or use of such cabs. Chester Melba, a driver of one of these cabs, carried McCallister, a passenger for hire, to the garage of the cab company where the driver, without any provocation or reason whatever, and without knowledge or authorization of his employer, intentionally and maliciously assaulted the passenger by hitting and beating him with a large and dangerous instrument known as an "air

gun," causing severe injuries. Thereafter the passenger sued the cab company and the driver for damages, was awarded judgment in the amount of $2600 and costs of $113.75. The insurance company was duly notified of the suit but refused to defend or pay the judgment, claiming that its policy did not cover this injury. The cab company has brought this action against the insurance company to recover the judgment, costs and counsel fees, which it has paid, amounting in all to $3,013.75. Judgment by default in favor of plaintiff was entered by the clerk when defendant failed to answer. Subsequently, such default judgment was set aside when it was made to appear that defendant had not actually received notice of the suit. Huntington Cab Co. v. American Fidelity & Casualty Co., D.C., 4 F.R.D. 496. There is no dispute as to any of the material facts. The case has been submitted to the court for final decision upon the pleadings and exhibits.

The questions in the case are: (1) Whether this intentional and unprovoked assault was an accident within the meaning of the policy; (2) whether the insurance contract in question was void as against public policy; and (3) whether the injuries were received "by reason of the ownership, maintenance or use" of the automobile within the meaning of the policy.

By the terms of the policy defendant agreed to indemnify plaintiff "against loss from the liability imposed by law upon the assured arising or resulting from claims upon the assured for actual damages to persons accidentally receiving bodily injuries * * * by reason of the ownership, maintenance or use of any of the automobiles * * * only while being operated for the purposes stated and subject to the limitations in Statement VIII of said schedule * * * if such claims are made on account of * * * (1) bodily injury or death suffered by any person or persons, other than the assured or his employees, as the result of an accident occurring while this policy is in force; * * *." Statement VIII described the purposes of operation as being taxi operation only, and provided that "this insurance covers no other use or operation."

In addition to the above provision, the policy contained an endorsement, required of all motor carriers by the Public Service Commission of West Virginia, pursuant to the requirements of Ch. 24A, Art. 5, Sec. 5(g), West Virginia Code, whereby the defendant insurance company agreed "* * * to pay any final judgment recovered against Insured for bodily injury to or the death of any person * * * resulting from the negligent operation, maintenance, ownership or use of motor vehicles under certificate of convenience and necessity or permit issued to the Insured by the Public Service Commission of West Virginia, or otherwise under the Motor Carrier Law * * *."

Were McCallister's injuries suffered as the result of an accident within the meaning of the contract of insurance? Plaintiff says that whether this injury was accidental is to be determined from the standpoint of the person injured; that where the injury comes to him through external force, not of his own choice or provocation, as in this case, then as to him it is accidental and covered by the insurance contract. Defendant contends that whether this injury was accidental depends upon the state of mind of the person who inflicted the injury, rather than the state of mind of the injured person; that this injury was not the result of mere accident, or an unexpected happening resulting from negligence, but was motivated by an intent to injure and is, therefore, not covered by the insurance policy. What was the real purpose and what is the legal import of the words "accidentally receiving bodily injuries * * * by reason of the ownership, maintenance or use of any of the automobiles * * * only while being operated for the purposes stated * * * and * * * suffered * * * as the result of an accident"? These questions call for a consideration of the authorities on the subject.

Objectively, an injury may be accidental, while subjectively it may not be. The bite of a dog or snake may be entirely intentional from the standpoint of the dog or snake, but there is no doubt that it would be accidental from the standpoint of the person receiving the injury. Westerland v. Argonaut Grill, 187 Wash. 437, 60 P.2d 228, 229. The word "accident" is derived from the Latin word "accidere," meaning to fall upon, befall, happen or chance. The courts have given to the word "accident" many varied definitions, depending upon the type of insurance policy and the general context of the policy in which

the word is used. The decisions show an effort to get at the meaning of the parties in the particular insurance contract. This means that in some types of insurance policies an intentional and designed injury has been held to be accidental, while in another type of policy it is said that the same intentional injury is not accidental.

In ordinary personal accident and life insurance policies the overwhelming weight of authority is to the effect that even where an injury or homicide has been contemplated and intentionally perpetrated by a third person, if the insured did not provoke it and was himself free from culpability, such injury or death is accidental, in the absence of a specific exclusion in the insurance contract. Harper v. Jefferson Standard Life Ins. Co., 119 W.Va. 721, 196 S.E. 12, 116 A.L.R. 389; Tabor v. Commercial Casualty Ins. Co. of Newark, N. J., 104 W.Va. 162, 139 S.E. 656, 57 A.L.R. 968; 1 Appleman, Insurance Law and Practice, § 486, page 599. See also collected cases in Employers' Indemnity Corp. v. Grant, 6 Cir., 271 F. 136, 20 A.L.R. 1123, and Georgia Casualty Co. v. Alden Mills, 156 Miss. 853, 127 So. 555, 73 A.L.R. 414. Such rule is based upon the proposition that whether an injury is accidental is to be determined from the standpoint of the person receiving the injury rather than from the standpoint of the one inflicting it. Where the injured person was the aggressor in the fight, a different result is obtained.

In the ordinary public liability policy covering a theatre, filling station, or other place of business, injuries resulting from ordinary negligence or even gross negligence are held to be accidental where there was no actual intent to injure. Ohio Casualty Ins. Co. v. Welfare Finance Co., 8 Cir., 75 F.2d 58; Travelers Ins. Co. v. Reed Co., Tex.Civ.App., 135 S.W.2d 611. Where the injury was intentional, and was inflicted by the insured, the courts have uniformly denied coverage on the ground that it is against public policy to insure or protect one against his own deliberate and intentional injury to another. New Amsterdam Casualty Co. v. Jones, 6 Cir., 135 F.2d 191; Hill v. Standard Mutual Casualty Co., 7 Cir., 110 F.2d 1001. The same result is reached where the insured has authorized, or consented to an injury intentionally inflicted by his employe. Floralbell Amusement Corporation v. Standard Surety & Casualty Co. of N. Y., 256 App.Div. 221, 9 N.Y.S.2d 524. Where the injury was intentional, and was inflicted by an employe of an insured in the ordinary public liability policy, some few courts have viewed the matter from the standpoint of the person who inflicted the injury and held that the injury was not accidental and denied coverage. Commonwealth Cas. Co. v. Headers, 118 Ohio St. 429, 161 N.E. 278; Sontag v. Galer, 279 Mass. 309, 181 N.E. 182; Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876; Cordon v. Indemnity Ins. Co. of North America, 6 Cir, 123 F.2d 363; Rothman et al. v. Metropolitan Casualty Ins. Co., 134 Ohio St. 241, 16 N.E.2d 417, 117 A.L.R. 1169. However, the majority of courts have reached a contrary conclusion and held that such injury, although intentionally inflicted, was suffered as the result of an accident within the meaning of this type of contract. Georgia Casualty Co. v. Alden Mills, 156 Miss. 853, 127 So. 555, 73 A.L.R. 408; Robinson et al. v. United States F. & G. Co., 159 Miss. 14, 131 So. 541; New Amsterdam Casualty Co. v. Jones, supra; Archer Ballroom Co. of Nebraska v. Great Lakes Casualty Co., 236 Wis. 525, 295 N.W. 702; Westerland v. Argonaut Grill, 60 P.2d 231; Fox Wisconsin Corporation v. Century Indemnity Co., 219 Wis. 549, 263 N.W. 567; E. J. Albrecht Co. v. Fidelity & Casualty Co. of New York, 289 Ill.App. 508, 7 N.E.2d 626. See also 7 Appleman, Insurance Law and Practice, § 4492, page 322.

In the ordinary automobile personal liability and property damage contract, the courts have likewise denied coverage on the ground of public policy where the injury was intentionally inflicted by the insured himself, or where the insured has authorized or consented to such intentional injury. In the case under consideration the driver of the taxicab, without any provocation, intentionally assaulted the passenger, but without authorization or consent of the insured. In such cases the courts have uniformly denied coverage. Under facts similar to those here, I have found no case where any court has held that this type of automobile policy covered this type of intentional injury. In deciding whether this type of injury was suffered as the result of an accident, text writers and the courts have said that the matter must be viewed from the standpoint

of the person who inflicted the injury, and that it was intentional and not accidental. 7 Appleman, Insurance Law and Practice, § 4312, page 76, and cases there cited. Two courts have passed over this so-called intentional feature of the case and denied coverage in this type of automobile policy on the ground that the injury was not one "arising out of the ownership, maintenance or use of the automobile." National Mutual Casualty Co. v. Clark, 193 Miss. 27, 7 So.2d 800, 802, 140 A.L.R. 927; Baron v. Auto Mutual Indemnity Co., 247 App.Div. 731, 285 N.Y.S. 486. There would seem to be no good reason to say that such an injury is accidental because it should be viewed from the standpoint of the person receiving the injury in life, accident, and public liability policies; and then adopt some other viewpoint that is certain to bring a different result in automobile personal liability contracts. It would seem that if this type of injury is accidental such as to cover a theatre owner for damages recovered by a patron for injuries intentionally inflicted by an employe, the injury here would likewise be accidental. The real reason for denial of coverage is that McCallister did not receive his injuries "by reason of the ownership, maintenance or use of any of the automobiles" covered by the policy. The assault did not arise out of the operation of the automobile. There is no causal relation between the assault and the actual operation of the taxicab.

A case directly in point is National Mutual Casualty Co. v. Clark, 1942, supra. There a passenger paid his fare of twenty-five cents as he was leaving a taxicab. The driver wanted more, and when the passenger was about 15 feet away the driver struck the passenger over the head with a piece of iron. The automobile liability policy limited coverage to injuries "caused by accident and arising out of the ownership, maintenance or use of the automobile." Such policy was required by an ordinance of the City of Jackson, Miss. as a prerequisite to the "operating of any taxicab in the City of Jackson." In holding that the policy did not cover the injury, the Supreme Court of Mississippi said:

"Its evident purpose was to protect passengers and other persons against the negligent operation of its taxicabs. Emphasis is throughout placed upon the automobile as a unit of liability by provisions requiring the identification of each unit so employed both by its serial number and its title status; by the limitation of liability upon 'each accident'; and by the condition that 'coverage in the policy is intended to the herein named Insured only on automobiles and trucks while being operated by the Insured or his employees and within the scope of the Insured's business.'

"Nor does the policy cover every liability to which insured may be subjected under the doctrine of respondeat superior. It was not intended as a general liability policy nor as an indemnity against liability for the personal misconduct of its employees not engaged in operating one of the listed automobiles as taxicabs. For example, it specifically excludes liability when such taxicab is being tested or demonstrated; when towing a trailer; or operated by a person under 14 years of age; or injury caused to an employee of the insured while engaged in its business; or while such employee is engaged in the operation, maintenance or repair of the automobile specifically covered; or if the automobile is being used for purposes other than the business of the insured."

Similar provisions are contained in the policy under consideration. The court continued:

"It is apparent from the enumerated exclusions (1) that the purpose of the policy is to indemnify the insured only for liability arising out of the operation of its taxicabs in the usual business of serving its patrons in transportation for hire; (2) that in each case above enumerated the liability of the taxicab company under the doctrine of respondeat superior is unaffected. Insurance did not cover the conduct of the business (as in Georgia Cas. Co. v. Alden Mills, 156 Miss. 853, 127 So. 555, 73 A.L.R. 408) but the use of the automobile. It is not a sufficient answer that its business is primarily the use of automobiles, because the company could still incur liability for negligence of its servants engaged in clerical or administrative duties as well as for acts arising out of its management. The phase of the business against which need for protection is indicated is that peculiar to the conduct of a taxicab business, namely, the operation of its taxicabs with their potentialities for personal injury. * * * It is apposite in this connection to observe that in the intial suit by appellee against the taxicab com-

pany, the action was not based upon the use or operation of the taxicab but upon the assault. It is also in point to emphasize that the tort of negligence is distinct from that of assault and battery. So in statutes providing for automatic appointment of the Secretary of State as process agent where injury occurs as a result of the operation or use of a motor vehicle, it is generally held that the purpose of such provision is to provide a method whereby those negligently using the highways of the State may be held to account. Hand v. Frazer, 139 Misc. 446, 248 N.Y.S. 557; Flynn v. Kramer, 271 Mich. 500, 261 N.W. 77.

"The basis upon which liability of the taxicab company may rest is in tort and is distinct both in quality and extent from the basis of liability of appellant ex contractu. Its secondary liability is not general and is not co-extensive with the responsibility to which the insured may be subject under the doctrine of respondeat superior. The driver may continue to 'operate' long after the vehicle has ceased. Had the assault occurred while appellee was seeking to procure transportation the insurer would clearly not be liable on the theory that the injury was sustained as a result of the operation or use of the taxicab, and this regardless of whether, pursuant to other principles the master could be held liable for the act of its servant. The contract is neither a general accident policy nor a peace bond and it was not exacted in order to guard against any potential dangers except those peculiar to the vehicular transportation of passengers upon the streets of the city. * * *

"We do not mean to hold that injury from assault may never be covered by such a policy, but that in any event the vehicle itself must be an active accessory. Liability is denied not because an assault was a factor in the injury but because the operation and use were not factors in the assault. * * * It is not in point whether the assault was related in time or place to the completed use of the taxicab. The test is whether it is causally related to its actual operation. The missing link in the chain of causation is such use or operation."

The cab company relies upon two earlier Mississippi cases. Georgia Casualty Co. v. Alden Mills, supra, and Robinson v. United States F. & G. Co., supra. The first case involved a public liability policy covering the conduct of the business of Alden Mills and is clearly and expressly distinguished from this type of case by the same court in its later decision in National Mut. Cas. Co. v. Clark, supra. The Clark case also expressly distinguishes the earlier Robinson case by pointing out that it involved a general public liability policy. These early Mississippi cases are generally cited as authority for the proposition that in general public liability contracts, an unprovoked intentional assault upon a patron of a theatre or other business is to be considered from the standpoint of the person receiving the injury; that such an assault is the "result of an accident" and covered by such type of policy. In this respect they are in accord with the weight of authority. Other cases cited by plaintiff may be distinguished on the same ground because they involve ordinary public liability contracts, not automobile liability policies.

Another case directly in point is Baron v. Auto Mutual Indemnity Co., supra. This was an action to collect from an insurance company a judgment obtained by a passenger against a taxicab company, the insured, for injuries suffered from an assault by the driver. Indemnity was provided to cover "injuries caused by operation, maintenance, use, or defective construction of motor vehicle." In denying coverage the court said [247 App.Div. 731, 285 N.Y.S. 487]:

"The purpose of the statute * * * is to afford protection from negligent 'operation' or 'use' of a taxicab such as an injury suffered by one of the public, or a passenger, as a consequence of negligent 'operation' or 'use' by the taxi chauffeur; but an unprovoked assault by a chauffeur is not so related to the 'operation' or 'use' of the taxicab as to come within the purpose of the statute."

The later case of Green Bus Lines v. Ocean Accident & Guaranty Corp., 257 App.Div. 851, 12 N.Y.S.2d 420, reaffirmed this holding. See also Slaats v. Chicago, M. & St. P. R. Co., 149 Iowa 735, 129 N.W. 63, 47 L.R.A.,N.S., 129 Ann.Cas.1912D, 642; O'Neal v. South & W. R. Co., 152 N.C. 404, 67 S.E. 1022; St. Louis, I. M. & S. R. Co. v. J. H. White & Co., 97 Tex. 493, 80 S.W. 77; State ex rel. Gallagher v. District Court, etc., 112 Mont. 253, 114 P. 2d 1047; Rose v. Gisi, 139 Neb. 593, 298 N.W. 333; Lima Used Car Exchange Co.

v. Hemperly, 120 Ohio St. 400, 166 N.E. 364.

In discussing whether an unprovoked assault was an accident within meaning of an ordinary automobile liability policy in 7 Appleman, Insurance Law and Practice, § 4312, page 76, the author, referring to the Baron case, says: "New York, reasonably enough, placed its result in an assault case upon the ground that such an injury was not related to the operation of an automobile, rather than upon the intentional feature." This would seem to be the better reasoning. In the same text, the author devotes a chapter to a discussion of the meaning of the words "caused by accident and arising out of the ownership, maintenance, or use of the automobile." After reviewing many authorities the author in § 4317, at page 86, concludes: "Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury."

The only case cited by plaintiff involving an automobile liability policy, is American Casualty Co. v. Southern Stages et al., 70 Ga.App. 22, 27 S.E.2d 227, 230. This case is not in point because it is based upon a Georgia statute entirely different from the West Virginia statute. Albert Clark was a paid passenger on Southern Stages, a common carrier, and he was ejected from a bus by a bus driver and subsequently confined to jail at the instance of an employee of the bus company on the ground that he was drunk when as a matter of fact he was only sick. American Casualty Co. had issued a policy to Southern Stages, as required by the Public Service Commission of Georgia, and this policy insured Southern Stages against bodily injury to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles under certificate of public convenience and necessity. The Georgia statute, unlike the West Virginia statute, did not leave to the Public Service Commission the duty of determining the terms and conditions of any bonds or insurance policies to be filed by common car-

riers. The Georgia statute itself set forth the obligations and conditions. It provides: "No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, for the protection, in case of passenger vehicles, of the passengers and baggage carried, and of the public, against injury proximately caused by the negligence of such motor common carrier, its servants or agents; * * *" Ga. Code Ann. § 68-612.

In other words the Georgia statute requires a policy covering liability of the common carrier on account of any and all acts of negligence, and the coverage is not to be limited, as it is in West Virginia, to liability "resulting from the negligent operation, maintenance, ownership, or use of motor vehicles." But the policy did limit coverage to operation, use and maintenance of the taxicabs. The statute and the policy were thus at variance in the Georgia case. The court held that the terms of the statute are read into the insurance contract and supersede any inconsistent provisions in the policy. It will be presumed that it was the intention of the parties to execute a policy as the law requires. The court said: "There is no doubt in our minds that under the statute referred to it was the legislative intent that the insurer carrier is to stand in the shoes of the motor common carrier of passengers and be liable to the passenger in any instance of negligence where the motor common carrier is liable." The Georgia court was careful to distinguish the Southern Stages case from cases like the one at bar and the Baron case. The opinion refers to the Baron case and points out that there the bond was given in compliance with a statutory provision, but the statute itself provided for passenger indemnity only from "negligent 'operation' or 'use'" of the taxicab. Vehicle and Traffic Law N.Y., Consol.Laws, c. 54, § 17. The Georgia court also referred to cases from Massachusetts and Ohio in line with the New York case, and distinguishes those cases by reason of the terms of the policy, not inconsistent with the statute, where coverage was limited to liability arising out of the operation or use of the automobile.

In West Virginia the statute merely creates the Public Service Commission and delegates to it full power to determine the terms, conditions and limits of liability of any insurance policies which

it may require of common carriers. West Virginia Code Ch. 24A, Art. 5, Sec. 5(g). Pursuant thereto the Public Service Commission, on May 31, 1939 (Rule I), provided by rules and regulations that: "No motor carrier * * * shall operate any motor facility upon the highways of this state, * * * unless * * * there shall have been filed with and approved by the commission * * * a policy of insurance * * * conditioned to pay * * * any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, ownership, or use of motor vehicles under such certificate or permit. * * *." This regulation has the force of statute. It is significant that the regulation, as well as the endorsement required thereunder (M.C. Form 13) both limit liability to injuries resulting from the "negligent" operation, etc., of the automobile. This language is inconsistent with any intention on the part of the Public Service Commission to require insurance covering any and all liability to which the cab company might be liable under the doctrine of respondeat superior, as contended by plaintiff. Furthermore, in the Southern Stages case, the action was based upon negligence of the motor carrier and its various employes, in failing to determine that the passenger was sick instead of being drunk, as the driver and other employes thought him to be. McCallister's action against the bus company was not founded upon negligence, but upon its liability as a carrier, irrespective of any negligence. As was said in Miller v. United States F. & G. Co., 291 Mass. 445, 197 N.E. 75, 77, referring to automobile liability policies: "It is common knowledge that protection against liability on the ground of negligence is the principal purpose of such policies."

██ Clauses in insurance contracts should be construed liberally in favor of ██

the assured. But such a rule of construction, cardinal as it is, should never be so used as to contravene the intention of the parties. Insurance contracts like other contracts should and must receive a reasonable interpretation in accord with the apparent object and plain intent of the parties. Thompson v. State Automobile Mut. Insurance Company, 122 W.Va. 551, 11 S.E.2d 849. In construing a similar policy in Cronan v. Travelers Indemnity Co., 126 N.J.L. 56, 18 A.2d 13, 15, the court said that operation and use held an overlapping meaning and implied an actual control or directing of the mechanism of the vehicle. 6 Blashfield, Part. 1, Cyclopedia of Automobile Law and Practice, Perm.Ed., § 3941. The court said: "Neither the public nor private interest is served by laxity in measuring the insurer's liability in accord with the terms of the contract, as understood by a person of reasonable intelligence." National Mutual Casualty Co. v. Clark, supra.

██ Answering the questions raised, it is my opinion (1) that this unprovoked assault was an accident within the meaning of the policy; (2) that the policy was not void as against public policy; and (3) that the injuries were not received "by reason of the ownership, maintenance or use" of the automobile within the meaning of the insurance contract.

██ Counsel have not cited, and the writer has not found, any West Virginia case where the facts are near to those under consideration. It is therefore my duty to look to the authorities from other jurisdictions, applying such general principles of state law as may be applicable. When this is done one conclusion is inescapable; —that the insurance policy in question does not cover the injuries described in the complaint.

The complaint must be dismissed and judgment entered for the defendant.